# BALDWIN SCHROEDER v. CITY OF ST. PAUL.[1]

July 21, 1911.

Nos. 17,101—(213).

**Board of school inspectors — statute inconsistent with charter.**

Subdivision 8, § 1320, R. L. 1905, conferring certain powers upon the trustees of common and independent school districts, *held* inconsistent with the provisions of the St. Paul charter, and not to confer the powers specified upon the board of school inspectors of St. Paul.

**Change of text-book.**

A resolution of the board of school inspectors of St. Paul, adopting for a term of three years a certain text-book for use in the schools, did not prevent such board from legally making a change from the text-book so adopted at any time such change was considered for the best interests of the schools.

Action in the district court for Ramsey county for judgment requiring defendant city, as an independent school district, to direct the board of school inspectors to desist from making any change in the text-books of the public schools during the period for which they were adopted, and particularly from making any change in the geographies. Plaintiff moved for a restraining order during the pendency of the action. The motion was denied, Kelly, J. From an order denying the motion for a restraining order and vacating the order to show cause, plaintiff appealed. Affirmed.

*C. D. O'Brien* and *Stan J. Donnelly,* for appellant.

*O. H. O'Neill,* for respondent.

Bunn, J.

This action was brought by plaintiff as a taxpayer and parent of

[1] Reported in 132 N. W. 317.

[Note]   Adoption of text-books for public schools, see note in 36 L.R.A. 277. Who may complain of noncompliance with statute in adopting or changing text-books in schools, see note in 19 L.R.A.(N.S.) 1003.

children attending the public schools of St. Paul, on behalf of him-self and other taxpayers and parents, against the city of St. Paul as an independent school district. Briefly stated, the allegations of the complaint are as follows:

The city of St. Paul is an independent school district, and maintains public schools as provided by the laws. of the state. Such schools are largely conducted and operated by a board of school inspectors appointed by the mayor by and with the advice and consent of the common council of the city. That said inspectors have from time to time selected and adopted the text-books for use in the schools; such books, when selected and adopted, being sold by the dealers to the pupils in the schools, and paid for by the pupils or their parents. That it was and is provided by statute in this state that, when a school board shall have adopted for use in any of the public schools a book or books, said books so adopted shall continue in use in such schools for not less than three or more than five years, without change. That the board of school inspectors of St. Paul on February 14, 1910, adopted certain books for use in the public schools of the city, and among others adopted for three years a book known as the "Natural Geography," by Redway and Hinman, then and now published exclusively by the American Book Company. About nine thousand copies of these geographies were sold and placed in use in St. Paul. On January 4, 1911, the board of school inspectors passed a resolution adopting, in place of the "Natural Geography," a geography by Tarr and McMurry, published by the MacMillan Company, and ordered the first-named books withdrawn from the schools and exchanged for the Tarr and McMurry geographies, and are proceeding to effect the change ordered, and to require the pupils of the schools to purchase the last-named geographies in place of the "Natural Geography."

The complaint further alleges "that such changes of said books will lead to great confusion and expense, and be highly and serious-ly detrimental to the effectiveness of said schools, * * * and that this plaintiff and other citizens in his position will be liable and will be put to great and irretrievable and unnecessary expense" by the said unlawful acts and proceedings. It is further alleged

that the board never reported its actions in reference to the change of text-books to the common council, and that the latter body never confirmed or acted upon the actions of the board.

The complaint demands judgment that the defendant city be required to direct the board of school inspectors to desist from making any change in said books during the period for which they were adopted, and that during the pendency of the action the defendant, its agents, and subordinates, including the board of school inspectors, be restrained from making the change in geographies ordered.

Upon this complaint, pursuant to an order to show cause, plaintiff moved for an order granting an injunction during the pendency of the action. Defendant interposed its answer, in which it admitted the adoption of the Redway Natural Geography for a term of three years in February, 1910, alleged a rescission of this action in November, 1910, and the passage of a resolution on January 4, 1911, adopting the Tarr and McMurry geography for a period of three years, in place of the Redway geographies, upon conditions set forth in the resolution. One of these conditions was that the MacMillan Company were to donate a sufficient number of geographies, not exceeding three thousand, to take up the Redway geographies purchased by the pupils during the school year 1910-1911, which conditions had been, prior to the passage of the resolution, agreed to by the MacMillan Company. The court heard the motion for an injunction upon the complaint and answer, and denied such motion. Plaintiff appealed from the order.

We deem it unnecessary to decide the question whether plaintiff, as a taxpayer or as the father of children attending the public schools, may maintain this action. We do not wish to dispose of the case on this ground, or on the ground that it is only a moot case; the change in the geography having been made since the decision below. We therefore assume, without deciding, that the case is properly before us for a decision on the merits.

Plaintiff contends that under subdivision 8, § 1320, R. L. 1905, the board of school inspectors, having adopted the Redway and Hinman geography for use in the public schools for three years, had

no power before that time expired to change the books so adopted. The questions that seem to us vital to a decision of this case are:

1. Does subdivision 8, § 1320, apply to the school district of St. Paul?

2. If so, does that subdivision forbid the .change made by the board in this case?

These questions make necessary an examination of the laws and the charter provisions relating to the school district of St. Paul and the powers of the board of school inspectors, and an examination of the provisions of subdivision 8, § 1320.

The city of St. Paul is a "special" school district, though the term "independent" school district is used in the special law which organized it. By Laws 1873, p. 52, c. 1, § 3, school districts are classified as follows: (1) Common school districts, embracing all districts organized under title 1, c. 36, of the General Statutes. (2) Independent school districts, embracing all districts organized under title 3 of said chapter 36. (3) Special school districts, embracing all districts organized wholly or in part under any special law of this state. The same classification is carried out in chapter 74, p. 115, Laws 1877, and again in section 1280, R. L. 1905. It is clear that the city of St. Paul, being a district organized under a special law, is a special school district.

As such school district it has the powers specified in the city charter: "Power to contract and be contracted with, sue and be sued, and with all the powers and rights specified in any general law of the state of Minnesota in relation to school districts, in all matters pertaining to public schools in said city." These powers "shall be exercised by and through said board of school inspectors solely under the legislative department of government of the city of St. Paul, except as in this act otherwise provided." [c. 11, § 473] The board of school inspectors "shall, as the head of the executive branch of the government of the city of St. Paul, execute all the powers vested by this act, or by the general laws of the state in any school district, or in the city of St. Paul as a separate and independent school district, and no other powers." The charter gives the board the exclusive control of fixing the amount of salary

115 M.—15.

to be paid to each teacher or employee, but gives the common council power to reduce the aggregate or total amount of salaries for the ensuing year. The board reports to the council when new schools are required, but it is for the council to order the purchase of sites and the erection of buildings. The title to school property is vested in the city, but the board has the care, custody, and control thereof. It is provided that the board of inspectors "shall have no power or authority to create any indebtedness against the city of St. Paul, or to pledge the faith and credit of said city in any respect whatever until after the common council or legislative department of the city government has, by ordinance, ordained what the expenditures for school purposes in said city for the school year shall be, and then only to the extent of the amounts so set apart." [c. 11, § 479] It is provided that all supplies for the board of inspectors shall be purchased by a committee, consisting of the mayor, the president of the common council, and the city treasurer.

The charter does not expressly give the board of inspectors any power or authority in reference to the selection or adoption of school-books. But it would doubtless have such power, even in the absence of charter or legislative provisions. It is a power that is essential to the proper execution of the board's duties as "an executive head of the city government," in charge of the schools, and such power is really given, as seen when reference is made to the "general laws," which specify the powers vested in school districts; the charter giving the board the powers conferred by any such law on any school district. Among other powers given by general laws to school boards is the power to prescribe text-books and courses of study. Section 1320, subd. 10, R. L. 1905.

Having thus considered the charter provisions relating to the powers and duties of the St. Paul board of school inspectors, it fairly appears that the charter, which was in 1900 adopted by the people as a home rule charter, attempted to provide fully for the educational system of the city, and to define the powers of the school district, and of the board of inspectors, common council, and certain officers of the city in regard to the exercise of those powers.

The central idea of the system seems to be that the board has full authority over the management of the schools, the selection and salaries of teachers, the care of the property of the district, and the courses of study. It has no power to make contracts, whether for school sites and buildings or for supplies, and no power to purchase. The council determines each year in advance what the expenditures for school purposes for that year shall be, within limits prescribed by the charter. The board exercises the powers conferred upon the district solely under the common council, except as in the charter otherwise provided.

There would be no difficulty in holding that no general law prescribing the powers of trustees of common and independent school districts applied to the special district of St. Paul, were it not for the provisions of the charter that say that the school district of St. Paul is vested with all the powers and rights specified in any general law of the state in relation to school districts, and that the board shall exercise such powers. These provisions were clearly intended to confer such powers as were not specified in the charter, and only such powers given by general laws as were consistent with the powers specifically conferred by the charter, and as were applicable to the system provided for in the charter. The question then is: Are the powers conferred upon trustees of common and independent school districts by subdivision 8, § 1320, R. L. 1905, consistent with the powers conferred on the St. Paul board by the charter, and consistent with the system provided for in such charter? This brings us to an examination of the general law in question.

Section 1312, R. L. 1905, provides that the care, management, and control of common and independent school districts shall be vested in a board of trustees, to be known as the "school board." Section 1314 provides that the school board of each independent district shall consist of six directors, to be elected at meetings of the district. Section 1320 provides that the school board shall have general charge of the business of the district, and of the schoolhouses and interests of the schools thereof. Subdivision 1 authorizes the acquiring of sites for schoolhouses and their erection by the

school board, when authorized by the voters at a regular or special meeting. Subdivisions 2 to 7 give other powers not material here. Subdivision 8 reads as follows: "When directed by a vote of the district, or when the board deems it advisable, adopt, contract for, and purchase text-books needful for the schools of the district, and provide for the free use of such books by the pupils of such schools, or their sale to them at cost; but no such adoption or contract shall be for less than three or more than five years, during which time such books adopted shall not be changed."

The provision that "no such adoption or contract shall be for less than three or more than five years, during which time such books·adopted shall not be changed," is the provision which plaintiff insists is applicable and mandatory as respects the action of the board of school inspectors in this case in rescinding the adoption of the Redway geography, and changing it for the Tarr and McMurry geography.

Consideration of the language of the whole section, and of the entire chapter, in connection with the prior laws which formed the basis of the code provisions, shows that the legislature was acting for the common and independent school districts of the state, and not for those organized under special laws. Subdivision 1, § 1320, for instance, provides that the school board may acquire sites and build schoolhouses, when authorized by the voters of the district. This would clearly be inapplicable to St. Paul, where there is no such thing as a meeting of the district, and no provision for a vote, and where the charter provides how sites shall be acquired and schoolhouses built. The section providing for the election of school directors is also impossible of application, as well as entirely inconsistent with the appointment of school inspectors under the charter. The subdivision authorizing school boards to purchase and sell school apparatus, furniture, and stores can have no application, and is inconsistent with the charter provision that all school supplies shall be purchased by a committee, composed of the mayor, president of the council, and the city treasurer. And subdivision 8 clearly cannot be applied in its entirety to the St. Paul school board. The provision is that, "when directed by a vote of the district or

when the board deems it advisable," the board shall "adopt, contract for and purchase text-books." The St. Paul board is not subject to a vote of the district, and it has no power under the charter to "contract for and purchase" text-books; such power being with the committee that purchases "school supplies."

We think that subdivision 8 grants powers to school boards that are inconsistent with the powers granted the school inspectors of St. Paul by the charter, and inconsistent with the general scheme for the management of the public schools provided for in the charter. Subdivision 8 gives the power to "adopt, contract for and purchase" text-books. This is very different from and a much greater power than the power to prescribe text-books, which is given by subdivision 10 of the same section. It could not have been intended by the framers of the charter that the school board of St. Paul, notwithstanding the limitations contained in the charter, should possess this broad power to make contracts, the exercise of which might bind the city by a contract for five years.

Nor does it appear that the board attempted to exercise any power to make contracts for schoolbooks in the passage of the resolution adopting the Redway and Hinman geography for a term of three years. The resolution was not a contract, and it bound neither the city nor the publisher of the books. It was an exercise of the board's power to prescribe text-books. The use of the word "adopt" is not significant, and the proviso that no change should be made for three years was of no effect. It did not prevent the board prescribing other books, if they considered a change for the best interest of the schools. It is entirely clear that the change here complained of was not to the pecuniary loss of plaintiff or any citizen, and there is no intimation that the interests of the schools, pupils, or parents were in any way injuriously affected.

Our conclusion is that no law prevented the board from making the change in geographies sought to be enjoined in this action, and that plaintiff made no case to justify the court in interfering with the action of the board of inspectors.

Order affirmed.