# STATE EX REL. T. E. DYBDAL AND OTHERS v. STATE SECURITIES COMMISSION AND OTHERS.[1]

March 5, 1920.

No. 21,539.

**Bank and banking — certificate to do business — act 1919 constitutional.**

1. Laws 1919, c. 86, providing for the granting by the State Securities Commission of a certificate of authority to do business as a bank, is enacted in the exercise of the police power and is constitutional, though it limits in the interests of the public the right to engage in banking; and the policy of the restriction, it being within constitutional limits, is for the legislature and not for the courts.

**State Securities Commission — administrative powers — act constitutional.**

2. The commission is an administrative body. The statute does not confer upon it judicial nor legislative powers and is not unconstitutional upon that ground, and in conferring upon it administrative powers with authority to determine facts and exercise its judgment in carrying out the purposes of the statute it is not constitutionally objectionable.

**Reasonable public demand for new bank.**

3. The statute provides for the granting of a certificate if there exists, among other things, a reasonable public demand for the bank. By a reasonable public demand the statute intends such a desire upon the part of the community for the bank as will make its coming welcome and insure an amount of business sufficient to promise it success. It may come from the natural desire of the community and upon its own initiative, or it may be the result of propaganda.

**State Securities Commission — review of action upon writ of certiorari.**

4. In reviewing on certiorari the determination of the commission the court can go no farther than to inquire whether it kept within its jurisdiction, whether it proceeded upon the proper theory of the law, whether its action was arbitrary or oppressive or unreasonable and so the exercise of its will and not of its judgment, and whether there was evidence upon which it might make the determination which it made. The responsibility for a correct determination, subject to the conditions stated, rests upon the commission and not upon the court.

[1] Reported in 176 N. W. 759.

**Finding sustained.**

> 5. Viewing the record in accordance with the rule stated it is *held* that the determination of the commission that there was no reasonable public demand for the proposed bank is sustained.

Upon the relation of T. E. Dybdal and others the supreme court granted its writ of certiorari directed to the State Securities Commission and others to review the order and proceedings of the commission denying the application of relators for a certificate authorizing them to operate a bank at Elbow Lake to be known as the Farmers Service State Bank. Affirmed.

*Todd, Fosnes & Sterling*, for relators.

*E. J. Scofield*, for respondents.

*Clifford L. Hilton*, Attorney General, and *Montreville J. Brown*, Assistant Attorney General, for State Securities Commission.

DIBELL, J.

Certiorari to the State Securities Commission to review its order denying the application of the relators for a certificate authorizing them to transact business as the Farmers Service State Bank at Elbow Lake in Grant county.

1. The statute, hereinafter quoted, was enacted in the exercise of the police power. It intends, in the interest of the public, to insure safe banking. It does not intend to create a monopoly nor to deter private individuals from engaging their activities in banking, except insofar as a proper regulation of banks in the interest of the public has such effect. That the business of banking is so intimately connected with the general welfare of the public that it may be constitutionally regulated under the police power is not open to question. Noble State Bank v. Haskell, 219 U. S. 104, 31 Sup. Ct. 186, 55 L. ed. 112, 32 L.R.A.(N.S.) Ann. Cas. 1912A, 487; Shallenberger v. First State Bank, 219 U. S. 114, 31 Sup. Ct. 189, 55 L. ed. 117; Weed v. Bergh, 141 Wis. 569, 124 N. W. 664, 25 L.R.A.(N.S.) 1217; State v. Woodmansee, 1 N. D. 246, 46 N. W. 970, 11 L.R.A. 420; In re Lunghino & Sons, 176 App. Div. 285, 163 N. Y. Supp. 9; Schaake v. Dolley, 85 Kan. 598, 118 Pac. 80, 37 L.R.A.(N.S.) 877, Ann. Cas. 1913A, 254; State v. Hill (W. Va.) 100 S. E. 286. The

policy of the restriction, being within constitutional limits, is for the legislature and not for the courts.

2.   The statute is not unconstitutional as conferring judicial or legislative power upon the commission.

The commission is an administrative body.   Judicial power is not conferred upon it.   That it determines facts or passes upon questions which may affect parties and exercises judgment and discretion does not imply that it has judicial power.   See State v. Clough, 64 Minn. 378, 67 N. W. 202; Steenerson v. Great Northern Ry. Co. 69 Minn. 353, 72 N. W. 713; Hunstiger v. Kilian, 130 Minn. 474, 153 N. W. 869, 1095.   Neither is legislative power conferred upon the commission.   The statute is complete and effective in itself.   That the legislature may delegate to commissions and boards administrative functions in carrying out the purposes of a statute is not to be questioned.   1 Dunnell, Minn. Dig. & 1916 Supp. § 1600, and cases cited.   And it may confer upon a board or commission authority or discretion to be exercised in carrying out the purposes of a statute.   See Williams v. Evans, 139 Minn. 32, 165 N. W. 495, 166 N. W. 504, L.R.A. 1918F, 542, and cases cited and reviewed.

3.   The statute provides for a hearing before the commission.   The conditions which must exist if the application is granted are stated as follows:

"If the applicants are of good moral character and financial integrity, and if there is a reasonable public demand for such bank in such location, and if the organization expenses being paid by the subscribing shareholders does [sic] not exceed the necessary legal expenses incurred in drawing incorporation papers and publication and recording thereof, as required by law, and if the probable volume of business in such location is sufficient to insure and maintain the solvency of the new bank, and the solvency of the then existing bank or banks in such locality, without endangering the safety of any bank in said locality as a place of deposit of public and private money, and if the state securities commission is satisfied that the proposed bank will be properly and safely managed, such application shall be granted, otherwise it shall be denied.   In case of the denial of such application, the state securities commission shall specify the grounds for such denial and the supreme court upon petition of any

person aggrieved may review by certiorari any such order or determination of the commission." Laws 1919, p. 87, c. 86, § 3.

Five things must appear to authorize the granting of a certificate:

(1) That the applicants are of good moral character and financial integrity.

(2) That there is a reasonable public demand for a bank in the location.

(3) That the organization expenses paid by the subscribing shareholders do not exceed the legal expenses incurred in drawing incorporation papers and publication and recording.

(4) That the volume of business in the location is sufficient to insure and maintain the solvency of the new bank and the solvency of the then existing banks in such locality without endangering the safety of any bank in said locality as a place of deposit of public and private money.

(5) That the commission is satisfied that the bank will be properly and safely managed.

The commission found that there was not a reasonable public demand for the proposed bank and denied the application upon that ground. It found no other fact.

It is difficult to give to the words "reasonable public demand" a clearer meaning than they carry without definition. They do not necessarily imply a public outcry or agitation for additional banking facilities. They do not necessarily negative the existence of adequate banking accommodations. They suppose upon the part of the community a desire of a character so substantial as to make the bank welcome and insure an amount of business sufficient to promise it success. The demand may come from the natural desire of the community and upon its own initiative, or it may be the result of propaganda. The requirement of paragraph 2 complements those of paragraph 4. Conceivably the commission might find the fact included within paragraph 2 and fail to find those included within paragraph 4, or vice versa, and in either case the application would be denied. Paragraph 2 intends that a bank shall come to a locality because of a desire for it and that it shall not be foisted upon the community when there is no reasonable wish for it there. It does not intend that one or more established banks may keep out another because the banking facilities sufficiently take care of the banking business. Its pur-

pose is not to deter competition or foster monopoly, but to guard the public and public interests against imprudent banking.

4. ⟦The statute provides for a review of the determination of the commission by the supreme court on certiorari. The review which the court can make of a finding of the commission is limited. It cannot disturb the commission's determination because it does not agree with it. It can only interfere when it appears that the commission has not kept within its jurisdiction, or has proceeded upon an erroneous theory of the law, or unless its action is arbitrary and oppressive and unreasonable so that it represents its will and not its judgment, or is without evidence to support it. This principle of review is applied when it is sought to review by mandamus or on statutory appeal the exercise of the various functions committed by the legislature to different boards and commissions. State v. State Medical E. Board, 32 Minn. 324, 20 N. W. 238, 50 Am. Rep. 575; Steenerson v. Great Northern Ry. Co. 69 Minn. 353, 72 N. W. 713; Sorknes v. Board of Co. Commrs. Lac qui Parle County, 131 Minn. 79, 154 N. W. 669; Farrell v. County of Sibley, 135 Minn. 439, 161 N. W. 152; Brazil v. County of Sibley, 139 Minn. 458, 166 N. W. 1077, and cases cited; Hunstiger v. Kilian, 130 Minn. 474, 153 N. W. 869, 1095, where many cases are collected and discussed. So, in People v. Brady, 268 Ill. 192, 108 N. E. 1009, the court, in referring to the action of the county auditor in refusing a certificate of authority to do business as a bank, said that "it is true that arbitrary power, to be exercised according to the whim or caprice of public officers, is inconsistent with our form of government, and any law which vests the enforcement or nonenforcement of the law in the particular case in the discretion of a public officer, unregulated by any rules or conditions, is arbitrary and invalid. * * * He may not arbitrarily withhold the certificate, alleging such a reason which does not, in fact, exist. Such a withholding would be an act of the will only, and not of the judgment, and would be such a palpable abuse of discretion as could be controlled by mandamus."

The discretionary character of the action of the board is recognized in the cases. Schaake v. Dolley, 85 Kan. 598, 118 Pac. 80, 37 L.R.A. (N.S.) 877, Ann. Cas. 1913A, 254; State v. Hill (W. Va.) 100 S. E. 286; In re Lunghino & Sons, 176 App. Div. 285, 163 N. Y. Supp. 9. The responsibility for a correct determination of the existence of a rea-

sonable public demand, when the commission keeps within the limits stated, is upon the commission and not upon the court. The statute could not constitutionally put such responsibility upon the court. Brazil v. County of Sibley, 139 Minn. 459, 166 N. W. 1077; Hunstiger v. Kilian, 130 Minn. 474, 153 N. W. 869, 1095. Its responsibility is only in determining, as we have said before, that the commission is within its jurisdiction, has not mistaken the law, has not acted arbitrarily or oppressively or unreasonably and so exercised its will and not its judgment, and that there is evidence to support its determination.

5. With this understanding of the limited scope of review it is unnecessary to review the evidence at length. Elbow Lake has 1,000 population and two banks. The county is 24 miles square, has 10,000 population and 14 banks. The two banks at Elbow Lake satisfy the actual needs of the community to the extent that no complaints are made of inadequate accommodations or want of good treatment; but, as we have suggested before, this does not negative the existence of a public demand. Money is always to be had at reasonable rates. Depositors are treated fairly and are given a proper interest rate. The testimony concedes that the two banks are courteous to the public and there seems to be no ill feeling against them or those interested in them. On the other hand there has been talk for several years of a third bank. There has been some anticipation that one would come. The locality has been looked upon, at least by some, as an open field for a new bank. The shareholders of the proposed bank number more than 100. Most of them are prosperous farmers, many of them worth $25,000 or $50,000 or $100,000. Some are merchants and a few are interested in other banks. Nothing is said against the incorporators nor the proposed management; indeed the suggestion is that they are excellent men. They want the bank and will give it a part or all of their business and others will be attracted to it. The commission might find from the evidence that those not interested in one or other of the two banks now at Elbow Lake or in other nearby banks or in the proposed new bank are indifferent as to whether it comes. The two banks have earned attractive profits for many years. This largely induces the incorporators of the new bank to enter and compete for business and the law makes no objection to their doing so subject to the regulations and limitations of the police statute.

It cannot be said that the commission proceeded erroneously or arbitrarily or that there is not evidence to sustain its determination that there was not a reasonable public demand and its determination is upheld.

Until now there has been no authoritative construction of the term "reasonable public demand." From the finding of the commission it does not appear whether its understanding was in harmony with our construction. Presumably it adopted the right construction. If it proceeded upon an understanding not in harmony with our construction it may reconsider the petition on the evidence already adduced or additional evidence and make such findings as the evidence justifies.

Order affirmed.