DANIEL DONOVAN, PATRICK GALLAGHER, CHARLES MORECRAFT, FRANCIS CONNORS, ANTHONY VATALARO, NATHAN LAPIDUS, STEPHEN TAYLOR, JOSEPH POPARTYS, STEPHEN GASDICK, LOUIS LISSENDEN, JOSEPH J. McCARTHY, MICHAEL FEDORECHKO, ALBERT BERKOWITZ, JAMES GLEASON, JOSEPH S. HARCHER, CHARLES KOLOKOWSKY, MICHAEL G. GAVRUN, JOSEPH MATCHKO, FRANK H. FITZPATRICK, JOSEPH W. DONOVAN, SAUL H. BUCHBINDER, CORNELIUS J. FACKINA, LEON J. COYLE, WILLIAM A. WILKINS, JOSEPH E. COLAHAN, PATRICK WARD, JOHN CALLAHAN, CATHERINE KIERNAN AND JOSEPH SAVAGE, PROSECUTORS, v. THE BOARD OF COMMISSIONERS OF THE CITY OF BAYONNE AND DENNIS O'LEARY, DIRECTOR OF PUBLIC SAFETY OF BAYONNE, DEFENDANTS.

Submitted May 11, 1934—Decided October 19, 1934.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the prosecutors, *William Rubin.*

For the respondents, *Alfred Brenner* (*Patrick J. O'Connell,* of counsel).

PER CURIAM.

The writ of *certiorari* brings up for review an ordinance abolishing the positions of the prosecutors, the official action of the director of public safety of the city of Bayonne together with resolutions adopted by the board of commissioners of the city of Bayonne dismissing prosecutors from

their office of patrolman and policewoman, in the police department, and reducing the other prosecutors in rank in that department.

The record discloses this situation:

On January 2d, 1934, the board of commissioners of the city of Bayonne passed an ordinance abolishing certain positions in the police department of the city. On January 5th, 1934, the board adopted certain resolutions the effect of which was to vacate the positions of twenty-one patrolmen, one policewoman, one photographer and assistant to the superintendent of criminal identification, two detectives, one motor mechanic (with the rank of lieutenant), three lieutenants of police, and three captains of police, and the consequent dismissal of twenty-one patrolmen, one policewoman, one photographer and assistant to the superintendent of criminal identification, and the demotion of all others involved to lower ranks, except one captain of police who had retired as such from the police department before the adoption of such resolutions. On the same day (January 5th, 1934), the director of the department of public safety, acting independently in his individual capacity as director having charge of the police department of the city of Bayonne, took action corresponding in effect with the proceedings of the board of commissioners, and filed with the board and the city clerk notice to that effect and the board of commissioners thereupon adopted resolutions "ratifying, approving and confirming" the action of the said director of the department of public safety.

The reason set forth in the ordinance, resolutions and other measures pertaining to the matters in point is that the action was taken "in the interest of economy and sound government."

The effect of such action was to cause a saving in the appropriation for police department salaries of $55,072, which sum was eliminated from the budget for the year 1934.

In connection with the demotion of the two lieutenants (who were the persons last promoted to lieutenancies), the testimony of the chief of police shows that the demotion of these two men having the rank of lieutenants was offset by the assignment to patrol duty of two other lieutenants of

police, one of whom had previously been assigned to the jitney office and the other to secretarial work in the office of the chief of police. With respect to the captaincies, the situation was that three captains were provided for in the police ordinance prior to the passage of the amendment under review. One of these places was vacant while the other two had been filled on December 12th, 1933, one week before the introduction of the amendatory ordinance which abolished, among other things, all three captaincies.

No new or novel question is raised in these proceedings.

The right of the governing body to abolish such positions for the purpose of economy and in good faith has been consistently and repeatedly upheld by the court. *Doyle* v. *Secaucus*, 10 *N. J. Mis. R.* 334; *affirmed*, 110 *N. J. L.* 62; 163 *Atl. Rep.* 893; *Spears* v. *North Bergen*, 10 *N. J. Mis. R.* 962; *affirmed*, 110 *N. J. L.* 173; 164 *Atl. Rep.* 468; *Paddock* v. *Hudson Tax Board*, 82 *N. J. L.* 360; 83 *All. Rep.* 185.

That the action of the governing body in this case was in the interest of economy is clearly established by the record wherein it is shown that economies were effected in police department salaries to the extent of $55,072 and that this sum was eliminated from the budget for the year 1934.

There is no evidence establishing bad faith on the part of the governing body in these proceedings.

In the case of *Blair* v. *Brady*, 168 *All. Rep.* 668; 11 *N. J. Mis. R.* 854, Chief Justice Brogan, speaking for this court, said:

"The court will not substitute its judgment on matters of this kind that concern the regulation of the internal affairs of municipal departments for the judgment of those selected by the people and charged by law with the duty of regulating such affairs, in the absence of a clear showing of bad faith."

There is no merit in the prosecutors' contention that the action of the governing body was illegal because the same was taken before the ordinance abolishing the positions of the prosecutors became effective.

That the manner of proceedings undertaken by the governing body in making the demotions and dismissals in the case at bar was proper and lawful is established.

In the case of *Spears* v. *North Bergen, supra,* it was said by this court:

"Prosecutors contend under their first point that the resolutions were of no effect as of June 3d because the ordinances could not become effective until June 15th. However, the case of *Anderson* v. *Weehawken,* 97 *N. J. L.* 371; 118 *Atl. Rep.* 208, is authority for the proposition that a fireman's position may be abolished by resolution since his appointment was accomplished in the same way. We think the procedure was proper, namely, the abolition of the office as to each incumbent by resolution, and then the complete abolition of the position by ordinance in order that no other might be appointed."

This is precisely the course pursued by the governing body in the case under consideration. The action of the governing body in passing such an ordinance is evidence of the good faith of the governing body in the matter because it insures the absolute abolition of the positions vacated by resolution of the governing body.

The right of the governing body to reduce the personnel of the police department is recognized by the legislature by the enactment of chapter 148 of the laws of 1933, page 299.

The ordinance and actions and resolutions of the municipal authorities under review will be affirmed, with costs.