JOSEPH S. HARCHER, RELATOR, v. JOHN J. HURLEY, DEFENDANT.

JOSEPH Z. POPARTEYS, RELATOR, v. JOHN J. HURLEY, DEFENDANT.

Submitted January 25, 1935—Decided November 1, 1935.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the relators, *William J. Rubin.*

For the defendant, *Patrick J. O'Connell.*

The opinion of the court was delivered by

Perskie, J. The stipulated facts disclose that the relators, and nineteen other patrolmen, were dismissed from the police department of the city of Bayonne, on January 5th, 1934, for economic reasons. That, we have held, was proper. *Donovan* v. *Board, &c., Bayonne,* 12 *N. J. Mis. R.* 792; 175 *Atl. Rep.* 143. Relators, under the circumstances and for the reasons more fully hereinafter set forth, challenge the office of patrolman now held by defendant.

It appears that in pursuance of the provisions of chapter 148, *Pamph. L.* 1933, *p.* 299, and chapter 114, *Pamph. L.* 1934, *p.* 310, a "special list" of the patrolmen dismissed, as aforesaid, was prepared. Relators, Joseph Z. Poparteys and Joseph S. Harcher, are first and seventh, respectively, on that list. These acts also provide, *inter alia,* that in the event "any new appointments" are made policemen or firemen removed or demoted for reason of economy "shall first be appointed thereto before any other person is appointed."

Defendant was also a patrolman of the police force of the city; he was first appointed on July 27th, 1926. But on April 18th, 1933, he was dismissed by Jerome J. Brady, then director of public safety, because of intoxication while on duty. On December 10th, 1934, almost twenty months after his dismissal and without any claim that it was illegal, defendant made application to the then director of public safety, Dennis O'Leary, for reinstatement. We are told that in pursuance of that application a hearing was had; although no record thereof was made or otherwise submitted. It does, however, appear that the director and the defendant had some sort of a conversation; but the details thereof were not recorded nor are they otherwise supplied in the record. There was a bible on the director's desk indicating that it was used to administer the oath of office to the defendant. That is not challenged. It was undoubtedly so used. But the statement that there was a hearing on the application for reinstatement is not very convincing or persuasive. At all events, the record is barren of any proof which formed the basis for the action of director O'Leary, who, on December 14th, 1934, certified to the board of commissioners that he

had "appointed, reappointed and/or reinstated John J. Hurley [defendant herein] to the office or position of patrolman * * *." The defendant has since December 17th, 1934, continued on the police force.

Each relator claims that the stated action of the director was, and the resultant holding of that office by the defendant is, in contravention of the acts of 1933 and 1934, *supra*. Harcher does so in pursuance of leave granted by Chief Justice Brogan "as a private citizen and taxpayer only." Poparteys does so on the ground that since defendant was discharged for reasons other than economy and his (defendant's) name was not on the "special list," and he, Poparteys, being first named on that list, was entitled to the office and should have been first appointed thereto.

Defendant, however, resists these claims on the grounds that the pertinent provisions of the acts in question apply only to "new appointments;" that he holds office not by virtue of a new appointment but rather by reason of having been merely reinstated to his former office.

*First:* Does the defendant hold office by virtue of having been reinstated thereto or does he hold office as a new appointee? To answer this alternative question, we look first to the definition of the word reinstatement. In 53 *C. J.* 1183, it is defined as "the act of reinstating; reinstatement; renewal; restoration to a former position, office or rank." And Webster's International Dictionary defines "reinstate," "to place again in possession or in a former state; to restore to a state from which one has been removed; to instate again; as to reinstate a king in the possession of the kingdom." Let it be marked that the police surgeon's certificate and report of the physical examination of the defendant is identical in form with those made in 1926, when the defendant was first appointed to the force; there was, of course, no allowance of back pay in the purported reinstatement and there could not have been any such allowance since the time to review the dismissal by *certiorari* had expired and there was no claim that the reinstatement was based on newly discovered evidence. Obviously, the director himself did not know how to correctly describe his act. So he joined the

ranks of the "and/or-ians" and characterized it as either an "appointment, reappointment and/or reinstatement." We digress long enough to make the observation that we concur with many other judges, appellate and otherwise, who severely condemn this hybrid expression. It is an expression which attained a temporary vogue but now appears, fortunately, as we think, to be on the wane. (See editorials, cases and comment in the American Bar Association Journal, under dates of July, August and September, 1932.)

It is interesting to note that no statutory authority is brought to our attention which would appear to give a director of public safety the right to reinstate a patrolman who, as here, was discharged by a prior director, and, particularly so when no claim is made that the discharge, in the first instance was illegal. But did the director have the implied power to do so? Assuming, but not so deciding. for it requires no decision here, that in a proper case supported by legal proofs and in a legal manner, a director would, in order to prevent a miscarriage of justice, have the implied power to correct such an injustice by reinstating a dismissed official, our answer to such a suppositional case is that this is simply not that type of a case. There is not, as already observed, a scintilla of proof to indicate the reason for the placing of the defendant in office.

But be that all as it may, we think that the action of the director in the premises constituted a "new appointment" of the defendant as a patrolman to the police force. It is clear that the effect of the defendant's unchallenged and undisturbed dismissal was to dissolve and terminate the relationship which existed between the parties. And this is so even though the challenged appointment, as here, is for the like office formerly enjoyed by the discharged person. When the defendant was appointed in 1934 a new and independent relationship was created between him and the city. So, in substance, did the Supreme Court of Pennsylvania hold in *Winch* v. *Philadelphia*, 107 *Atl. Rep.* 217. And in *Callahan* v. *Philadelphia*, 167 *Id.* 293, the same court, in treating of a substantially like situation, said: "His status is as though he has never been in the city's service as we said in Winch *v.*

Philadelphia." Being a new appointment it should have been made from the list of those qualified to be first appointed.

*Second:* Is Harcher qualified to invoke the aid of the court in the premises? It is, of course, well settled that a member of a police force is a public officer; that a citizen and a taxpayer not claiming title to the office, on permission granted to file an information in the name of the attorney-general, may challenge the validity of title to office. *Speck* v. *Fairview,* 7 *N. J. Mis. R.* 410; 145 *Atl. Rep.* 618. And that after leave is granted to file such an information, the status of the relator will be presumed in the absence of proof to the contrary. It is a matter to be considered as was said by Chief Justice Gummere in *Reihl* v. *Wynne,* 105 *N. J. L.* 507, 511; 146 *Atl. Rep.* 204: "* * * upon the application of a relator for leave to file the information (*Milchell* v. *Tolan,* 33 *N. J. L.* 195), and is, by implication, determined adversely to the incumbent by the granting of such leave. The fact that the application was made to and granted by a single justice of this court does not make the procedure just referred to inapplicable; for, in entertaining the petition for leave to file the information and acting upon it, he exercises the power lodged in the court, and his act is accepted as that of the court of which he is a member. *Bonynge* v. *Frank,* 89 *N. J. L.* 239, 241." See, also, *Beard* v. *Aldrich,* 106 *Id.* 266; *affirmed,* 107 *Id.* 516; *Klair* v. *Bacharach,* 10 *N. J. Mis. R.* 448; 159 *Atl. Rep.* 538.

*Third:* As to relator Poparteys, it is conceded that the acts of 1933 and 1934 do not contain any applicable provisions as to seniority preferment. There is no proof here that this relator was first named on the "special list" because of his seniority of service. As a matter of fact, no explanation, of any kind, is made for the order of those named on said list. It is, however, asserted in the brief for the relator that his name appears first on the special list because of his seniority of service and on that assertion it is argued that he was entitled to be first appointed as a patrolman instead of the defendant. The alleged basis of that contention is that the spirit of the acts of 1933 and 1934, *supra,* compel such an interpretation and conclusion; that the legislature

intended that the seniority of service of those discharged, because of economy, should be recognized and honored as being first appointed in case of a "new appointment."

No one can justly quarrel with the fair and logical result sought to be accomplished by that contention. Much is to be said in its favor. The difficulty, however, is that there is, concededly, no such expressed legislative intention in these acts; nor is such intent inferable. There is obviously nothing in the said acts to indicate which one of those on the "special list" should under the circumstances of the case at bar, be first appointed in the event of a "new appointment." It may well be that the acts of 1933 and 1934, in this respect (seniority of service rule), unlike chapter 176, *Pamph. L.* 1930, *p.* 608 (An act regulating the employment, tenure and discharge of certain officers and employes of this state, &c.), exhibit a *"causus omissus"* which this court, under the circumstances, cannot supply. Compare, *Public Service Co-ordinated Transport* v. *State Board, Tax Appeals,* 115 *N. J. L.* 97; 178 *Atl. Rep.* 550, and cases therein cited which point out the lack of power of the courts in such cases.

We find no merit to the contention that the acts of 1933 and 1934 are unconstitutional. On the contrary we fail to discern in them any constitutional infringements.

In fine, we conclude that the relator Harcher is entitled to a judgment of ouster against the defendant, without costs; and that the writ prosecuted by Poparteys is dismissed, without costs.