STATE EX REL. RICHARD F. SPURCK v. CIVIL SERVICE BOARD AND OTHERS.[1]

May 14, 1948.

No. 34,619.

[1]Reported in 32 N. W. (2d) 583.

*Briggs, Gilbert, Morton, Kyle & Macartney,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *William C. Green,* Special Assistant Attorney General, for respondents.

PETERSON, JUSTICE.

Mandamus to compel relator's reinstatement to a civil service position.

Respondents King, Schmahl, and Driscoll are executive officers of the state. They had no part in classifying relator's position or allocating him to any position and are not concerned in any of the questions here raised. Apparently, they were joined as parties to make the judgment binding on them, because they have fiscal duties to perform in connection with the payment of salaries of public employes. The issues here arise out of the controversy between relator and the civil service authorities, and the case will be treated accordingly.

The questions for decision are:

(1) Whether, in a pending certiorari proceeding, where it is judicially established that a civil service employe is entitled to a certain position, mandamus will lie to compel the state civil service board to allocate him to such position; and

(2) Whether a determination by the state civil service board, in the exercise of its power under M. S. A. 43.24, to "reinstate" a discharged civil service employe, bars a proceeding in mandamus by a discharged civil service employe to compel the state civil service board to allocate him to the position shown on certiorari to be the one he is entitled to, where the determination ordered the discharged employe to be reëmployed in a position different from the one to which he was legally entitled, and, in addition, that he be placed on a waiting list for possible future employment contingent upon the creation of the position in which he was ordered reëmployed and funds being made available therefor.

In 1934, relator, an honorably discharged soldier and veteran of World War I, was hired as an attorney by the state relief agency, which was under the jurisdiction of the state executive council. The employment continued until April 22, 1939, when the functions of

the agency were transferred by M. S. A. 256.01, subd. 3, to the department of social security, division of social welfare, where relator's employment continued. He claims that he was blanketed into the classified civil service with the status he had on April 22, 1939, the effective date of the state civil service act, by the provision of M. S. A. 43.34:

"* * * honorably discharged veterans of past wars and other persons enumerated in section 43.30 holding offices or employments within the classified service on the effective date of this chapter are hereby given a permanent classified civil service status as of the effective date of this chapter, and shall thereafter be subject to and protected by the provisions of this chapter * * *."

In June 1939, the division hired one Metcalf as an attorney with the same duties and responsibilities as relator. Soon thereafter relator commenced to have difficulties concerning his employment status with both the division and the director of civil service. The proceedings to which relator resorted in attempts to vindicate his rights have been referred to in the certiorari case between the same parties, decided today. State ex rel. Spurck v. Civil Service Board, 226 Minn. 240, 32 N. W. (2d) 574. Although the director of civil service allocated Metcalf to class attorney IV, he refused to classify relator's position and to allocate him thereto. In October 1941, relator commenced a proceeding for a writ of mandamus to compel the director of civil service to classify his position and allocate him to it. The district court ordered the writ to issue. On April 22, 1943, we affirmed in State ex rel. Spurck v. Pennebaker, 215 Minn. 79, 9 N. W. (2d) 259.

Meanwhile, relator's position had been classified by the ex parte action of the civil service director as class attorney I, and he was allocated thereto. The classification of the position relator held on April 22, 1939, should have been as class attorney IV, not class attorney I, as we decided as a matter of law in the certiorari case today. On April 27, 1942, while the appeal was pending in this court in the mandamus proceedings to compel the director of civil service to classify relator's position and allocate him thereto, the

division of social welfare discharged relator. Thereupon, he demanded under M. S. A. 43.24 a hearing before the civil service board. The board approved the discharge. On April 19, 1944, in certiorari proceedings, the district court reversed the proceedings discharging relator.

Subsequent to the decision of the district court reversing relator's discharge, the board on its own motion instituted a hearing to determine the "conditions" upon which relator should be "reinstated." Relator appeared and objected to the jurisdiction of the board to take any action except that of reinstating him to the position which he held on April 22, 1939, "in conformity with the Civil Service Act of Minnesota, together with all perquisites, salary and privileges pertaining to said duties." Under the circumstances, this amounted to a demand for reinstatement with classification of his position as class attorney IV and for allocation thereto. The board overruled relator's objection.

On July 6, 1944, the board made findings that at the time of relator's discharge he was employed as class attorney I and that the position had been abolished. There was no evidence to support the findings. The only evidence with respect to the matter was that of the state director of personnel, who testified that he did not know of his own knowledge that the position had been abolished, but:

"I know this much—the job was never refilled. At the present time there is no need for any further legal services within the Division.

＊　＊　＊　＊　＊

"I don't know if that has been done. It can be abolished immediately."

The board ordered that relator be forthwith "reinstated to class attorney I, without loss of seniority," and that he be placed on the departmental reëmployment register for employment as such an attorney when and if such a position should be created and funds made available therefor. This determination has not been reviewed in any judicial proceeding, much less reversed or set aside. In the

certiorari case between the same parties decided today, we held that relator's position as of April 22, 1939, should have been classified as class attorney IV and that he should have been allocated thereto.

After a formal demand for reinstatement, relator brought this proceeding for a writ of mandamus to compel such action. The only defense considered below was the one that relator was barred from any relief by the board's determination of July 6, 1944, to the effect that relator be "reinstated" in the nonexistent position of class attorney I, with right of employment therein when and if such a position should be created and funds provided therefor. Upon the trial relator made the following offers of proof, which were ruled out:

"Mr. Morton [counsel for relator]: I offer to prove by the testimony of the witnesses, Robert Stover and Jarle Leirfallom, that at all times since April 22, 1939, there has been and now is in the Division of Social Welfare and its predecessor, the relief agency, a position or positions in which the various duties performed by the relator on April 22, 1939, or duties substantially identical therewith, have been and are being performed by an individual or individuals junior in seniority to the relator.

"I offer to prove by the testimony of Jarle Leirfallom that at all times since April 22, 1939, there have been and now are unencumbered funds with which to pay the compensation of the relator. That is the extent of my proof."

Thereupon, the trial court sustained the defense that relator was barred by the prior determination and denied the writ. Relator appeals from the order denying his motion for a new trial.

Relator contends that the board's determination of July 6, 1944, of the conditions of his reinstatement was no defense, for the reason that the determination was void for lack of jurisdiction, because (a) it was no reinstatement at all, and (b) it was based upon findings for which there was no evidentiary support. The board contends (1) that mandamus is not the proper remedy to enforce relator's civil service status rights, if any; (2) that it had, as an incident to determining the conditions of reinstatement, under the provisions of M. S. A. 43.24 to *reinstate* the employee under such condi-

tions as it deems proper" (italics supplied), the power to determine whether relator should. be ordered reëmployed in a different position from the one to which he was entitled under the civil service law, even though such position was nonexistent and the reinstatement amounted to no more than putting relator on a waiting list for employment in the position when and if it should be created and funds made available therefor; and (3) that the determination made on July 6, 1944, was immune from collateral attack and conclusive as to all matters thereby determined.

1. Mandamus is the proper remedy to enforce performance by the state civil service board of duties which the law clearly and positively requires. State ex rel. Spurck v. Pennebaker, 215 Minn. 79, 9 N. W. (2d) 259. Under the rule, mandamus will issue to compel an employe's reinstatement to a position in the civil service. Horrigan v. Mayor of Pittsfield, 298 Mass. 492, 11 N. E. (2d) 585.

2. Whether the board's determination of July 6, 1944, was a bar to this proceeding, as the court below held it was, depends upon whether the board had jurisdiction to make the order in question. This raises a question concerning jurisdiction of the subject matter.

Jurisdiction of an administrative agency consists of the powers granted it by statute. Lack of statutory power betokens lack of jurisdiction. It is therefore well settled that a determination of an administrative agency is void and subject to collateral attack where it is made either without statutory power or in excess thereof. State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 176 N. W. 759; Borax Consolidated, Ltd. v. Los Angeles, 296 U. S. 10, 56 S. Ct. 23, 80 L. ed. 9, rehearing denied, 296 U. S. 664, 56 S. Ct. 304, 80 L. ed. 473; Federal Trade Comm. v. Raladam Co. 283 U. S. 643, 51 S. Ct. 587, 75 L. ed. 1324, 79 A. L. R. 1191; Hardin v. Jordan, 140 U. S. 371, 11 S. Ct. 808, 838, 35 L. ed. 428; Tate v. Carney, 65 U. S. 357, 16 L. ed. 693; Comegys v. Vasse, 26 U. S. 193, 7 L. ed. 108; Borgnis v. The Falk Co. 147 Wis. 327, 133 N. W. 209, 37 L.R.A.(N.S.) 489; 42 Am. Jur., Public Administrative Law, §§ 109, 157, 159, 160. For example, in the Borax Consolidated, Hardin, and Tate cases, it was held that a decision of the general land office or

an agency thereof, in the exercise of statutory power to determine the rights of rival claimants to land to which the government had legal title, determining as between rival claimants title to land which the government had transferred, was absolutely void for lack of jurisdiction of the subject matter, and that jurisdiction was not conferred by appearance of the claimants before the land office and litigation there by them of their claims of title to the land. In the Comegys case, it was held that a decision by a commission with power to assert claims against Spain, but with none to determine conflicting claims of beneficiaries of the fund recovered determining the rights of the beneficiaries to the fund recovered, was void for lack of jurisdiction and no bar to subsequent judicial proceedings by a beneficiary of his rights to recover a share of the fund.

3. The application here of the rules stated for determining the existence of jurisdiction compels decision that the determination in question was without jurisdiction and void upon the ground that the board was not only without statutory power to make it, but that it in fact also exceeded the power it had with respect to the matter. After the district court reversed the board's approval of relator's discharge, its sole duty in the premises was to order him *reinstated*. M. S. A. 43.24 provides:

"* * * After hearing and considering the evidence for and against the disciplinary action, the board shall approve or disapprove the action. In case of approval the disciplinary action shall be deemed final as ordered. In case of disapproval the board shall *reinstate* the employee under such conditions as it deems proper and may order full pay for lost time." (Italics supplied.)

It is plain from the statute that the board was under the duty to "reinstate" relator. While it had the power to prescribe conditions of reinstatement, there had to be a reinstatement before there could be any conditions thereof. Whatever else the board did, it was required to *reinstate* relator. It could not, under the guise of prescribing conditions of reinstatement, deny relator reinstatement altogether. Reinstatement of a discharged employe means to restore him

to the position to which he was entitled at the time of his discharge. Horrigan v. Mayor of Pittsfield, 298 Mass. 492, 11 N. E. (2d) 585, *supra;* Barrows v. Riss & Co. Inc. 238 Mo. App. 334, 179 S. W. (2d) 473; Harcher v. Hurley, 116 N. J. L. 18, 181 A. 309; Berg v. Seaman, 224 Wis. 263, 271 N. W. 924; 36 Wd. & Phr. & Supp. (Perm. ed.) "Reinstate," "Reinstatement," pp. 728-730.

The Berg case, *supra,* arose under the Wisconsin statute providing that where a discharged employe demands a hearing (224 Wis. 265, 271 N. W. 925) "the board [after hearing] shall either sustain the action of the appointing officer, or shall reinstate the employee fully, or upon such conditions as the board shall determine," and which is, as is self-evident, substantially the same as M. S. A. 43.24 here involved. There, a discharged graduate nurse, who had been promoted as the result of a civil service examination to that position from that of physiotherapy aid, demanded a hearing before the board, which, because it deemed her discharge too severe, ordered her restored to her former and inferior position as physiotherapy aid. Upon refusal of the appointing official to comply, the employe brought mandamus to compel compliance. The court held that the board's order was void for lack of jurisdiction, and subject to collateral attack in the mandamus proceeding upon the ground that the board had power to order a *reinstatement* of the employe to her former position, but not her *reëmployment* in a different one, and said (224 Wis. 266, 271 N. W. 925):

"The point of controversy is whether the word 'reinstatement' in the statute cited means reinstatement in the position occupied by the employee before her discharge, or reinstatement in the service of the institution. We are of opinion that the word means reinstatement to the position from which the employee was removed when she was discharged. The order [of the board on appeal] was to offer re-employment. *Re-employment is not reinstatement,—much less is re-employment in the service in a position entirely different from the service performed by the employee in the position from which she was removed reinstatement.* Re-employment under the order of the personnel board, if the plaintiff would accept the position offered, would

not be reinstatement in the position from which she was removed and *the personnel board's power is limited to reinstatement."* (Italics supplied.)

The board's determination here is void under the rule upon the ground that it is not a reinstatement at all. As a matter of law, as we held in the certiorari case today, relator's position under the civil service was class attorney IV. Reinstatement means restoration to that position. Instead, the board ordered him restored to a position as class attorney I, which was one of inferior civil service status. Ordering reëmployment in an inferior position instead of the one to which the employe was entitled under the civil service law was not a reinstatement at all and was void. Berg v. Seaman, *supra.* The board's determination allocating relator to class attorney I was void for that reason alone.

Furthermore, placing a discharged employe upon a waiting list for future possible employment contingent upon creation of a job and upon availability of funds therefor, as here, is not a reinstatement. As has been pointed out, reinstatement means restoration to the position to which the employe was entitled at the time he was discharged. It means giving him a job. This the board's determination did not do; it in effect denied him one.

4. An administrative agency has no power or jurisdiction to make findings for which there is no evidentiary support. State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 176 N. W. 759; Federal Trade Comm. v. Raladam Co. 283 U. S. 643, 51 S. Ct. 587, 75 L. ed. 1324, 79 A. L. R. 1191, *supra;* Matter of McLean v. Jephson, 123 N. Y. 142, 25 N. E. 409, 9 L. R. A. 493; 42 Am. Jur., Public Administrative Law, § 109.

In the Dybdal case we said (145 Minn. 225, 176 N. W. 761):

"* * * The review which the court can make of a finding of the commission is limited. It cannot disturb the commission's determination because it does not agree with it. It can only interfere when it appears that the commission has not kept within its jurisdiction, or has proceeded upon an erroneous theory of the law, or

unless its action is arbitrary and oppressive and unreasonable so that it represents its will and not its judgment, or *is without evidence to support it.* This principle of review is applied when it is sought to review *by mandamus* or on statutory appeal the exercise of the various functions committed by the legislature to different boards and commissions." (Italics supplied.)

In the Federal Trade Commission case, where there was a direct attack on a cease and desist order, the thought was expressed aptly in the following language (283 U. S. 654, 51 S. Ct. 592, 75 L. ed. 1332) :

"* * * But one of the facts necessary to support jurisdiction to make the final order to cease and desist, is the existence of competition; and the Commission cannot, by assuming the existence of competition, if in fact there be none, give itself jurisdiction to make such an order. If, as a result of the inquiry, it turn out that the preliminary assumption of competition is without foundation, jurisdiction to make that order necessarily fails, * * *."

In Interstate Commerce Comm. v. Louisville & N. R. Co. 227 U. S. 88, 91, 92, 33 S. Ct. 185, 186, 187, 57 L. ed. 431, 433, 434, where a rate order was attacked collaterally in an injunction action to restrain its enforcement, the court said:

"* * * A finding without evidence is arbitrary and baseless.

* * * * *

"* * * A finding without evidence is beyond the *power* of the Commission." (Italics supplied.)

The board's findings upon which its determination rests lack evidentiary support entirely in at least two respects, viz., (1) that the position of class attorney I had been abolished, and (2) that the work formerly done by relator while he was wrongfully allocated to that position was no longer being performed. As has been pointed out, it was clear from the testimony of the director of personnel that the position had not been in fact abolished. This he proposed to do subsequent to the hearing. Hence, the finding that the position had been abolished was absolutely without evidentiary support. The

evidence was all to the effect that the duties formerly performed by relator were being performed by Metcalf. The finding to the contrary was not only without evidentiary support, but was an error of law as well, as we held in the certiorari case today. Consequently, the determination was void also upon the ground that it lacked evidentiary support.

In the final analysis, the board not only failed to "reinstate" relator, but also, as a basis for denying him actual reëmployment, made its finding void for lack of evidentiary support that the position of class attorney I, which was not the position to which he should have been reinstated, had been abolished, and on top of that ordered him placed on a waiting list for employment in that position contingent upon its being recreated and funds made available therefor. The interposition of so flimsy a bar as an administrative determination having no evidentiary support will not obscure relator's plain right, nor obstruct the giving of relief appropriate for the enforcement of it. As said in Matter of Wipfler v. Klebes, 260 App. Div. 228, 230, 22 N. Y. S. (2d) 1, 3:

"* * * A civil service employee may not be removed through abolition of his position, when the lack of good faith is obvious, or be denied reinstatement where the work which he formerly did is now being done by another person or persons having no civil service standing."

5. Where an employe's right to a position having a particular classification in the civil service is established in a certiorari proceeding, mandamus will lie to compel the appropriate officers to allocate the employe thereto. State ex rel. Jenkins v. Ernest, 197 Minn. 599, 268 N. W. 208. Here, as a matter of law, relator established in the certiorari case decided today his right to the position of class attorney IV. He is entitled to a peremptory writ of mandamus to compel the board to allocate him accordingly.

6. Where an issue is settled as a matter of law by the record, this court will determine the question accordingly and thereby avoid the delay and expense of a retrial. Droege v. Brockmeyer, 214 Minn.

182, 7 N. W. (2d) 538; Penn Anthracite Min. Co. v. Clarkson Securities Co. 205 Minn. 517, 287 N. W. 15; 1 Dunnell, Dig. & Supp. §§ 428, 429. We applied the rule recently in Chase v. General A. F. & L. Assur. Corp. Ltd. 225 Minn. 363, 30 N. W. (2d) 633.

The order below should be reversed with directions to enter judgment for relator that he is entitled to a writ of mandamus compelling the state civil service board to allocate him to class attorney IV in accordance with the determination in the certiorari proceeding that he is entitled to such allocation.

Reversed with directions to proceed in accordance with the opinion.

MR. JUSTICE KNUTSON, not having been a member of the court at the time of the argument, took no part in the consideration or decision of this case.