# ANSON B. JACKSON v. BOARD OF EDUCATION OF CITY OF MINNEAPOLIS.[1]

August 26, 1910.

Nos. 16,679—(198).

**Board of education of Minneapolis — amendment constitutional.**

Chapter 157, p. 444, Sp. Laws 1878, establishing Minneapolis a school district and declaring the board of education a corporation, construed as part of the charter of the city. An amendment to that act in an enactment entitled "An act to amend the charter of the city of Minneapolis" is not in conflict with section 27, art. 4, of the constitution of Minnesota.

Submission of a controversy to the district court for Hennepin county upon an agreed statement of facts, pursuant to R. L. 1905, § 4286. The services mentioned in the opinion were rendered in a suit by Mae Snow against defendant board of education and five of its members. The other facts are stated in the opinion. The matter was heard by Hale, J., who found that plaintiff was not entitled to recover $650 or any other sum, and ordered judgment in favor of defendant. From the judgment entered pursuant to the order, plaintiff appealed. Affirmed.

*A. B. Jackson,* for appellant.
*Frank Healy* and *William H. Morse,* for respondent.

O'BRIEN, J.

This controversy was submitted to the district court without pleadings upon an agreed statement of facts pursuant to section 4286, R. L. 1905. Plaintiff was, with the approval of the city attorney of Minneapolis, employed by defendant as an attorney, and rendered to defendant legal services of the value of $650. The board of education of the city of Minneapolis was organized under chapter 157, p. 144, Sp. Laws 1878, and constitutes and is the public

[1] Reported in 127 N. W. 569.

school authority of the municipality of the city of Minneapolis. The agreed statement of facts contained this:

"The said parties also agree that the said statement and account of said A. B. Jackson for his said services has been duly approved and allowed by vote and resolution of said board as a just and proper charge against said board of education, necessarily incurred in the defense of the said suit against said board, above referred to; and that the only controversy between the parties hereto with respect to the payment of said account from the funds of the said board of education arises on the refusal of the president of the said board to sign a warrant therefor, because of doubts entertained by said president of the said board whether the employment of said Jackson to act as associate counsel with the city attorney for and on behalf of said board in the said litigation, and the payment for his services by the said board, is not made unlawful by chapter 33 of the Special Laws of Minnesota for the year 1889, [p. 593] entitled 'An act to amend the charter of the city of Minneapolis.' "

Neither the act of 1878 nor any subsequent act specifically referring to it placed any limitation upon the power of defendant to employ legal assistance, but chapter 33, p. 593, Sp. Laws 1889, declared the city attorney of Minneapolis should have charge of all legal matters connected with the city government, and all the several heads and departments thereof, naming the board of education and other boards, and provided, further, that none of the boards named should in any case employ, retain, or pay any attorney for legal services. This act was entitled, "An act to amend the charter of the city of Minneapolis."

Plaintiff contends that under the act of 1878 defendant is a corporate entity entirely separate and distinct from the city of Minneapolis, and as such has every ordinary and implied power incident to corporate existence; that its powers could only have been changed by a subsequent act of the legislature properly entitled and adopted for that purpose; that chapter 157, p. 444, Sp. Laws 1878, forms no part of the charter of the city of Minneapolis, and hence the inclusion in chapter 33, p. 593, Sp. Laws 1889, of any limitation upon the powers possessed by defendant was invalid, inasmuch as the title of the

act was restrictive and referred exclusively to amendments of the
city charter, and therefore conflicts with section 27, art. 4, of the con-
stitution requiring the subject of an act to be expressed in its title.
The trial court found against this contention and directed judgment
for the defendant upon the ground that the prohibition against the
employment of legal assistants was valid, and restricted defendant's
power in that respect.

The only question presented on the appeal is the validity, as ap-
plied to defendant, of these provisions of chapter 33, p. 593, Sp.
Laws 1889.

1. The charter of the city of Minneapolis is found in a large num-
ber of laws, general and special. Before the amendment to the con-
stitution prohibiting special legislation the title "An act to amend
the charter of the city of Minneapolis," would have been sufficient to
authorize the amendment of any prior act which formed part of the
charter of the city. State v. Anderson, 63 Minn. 208, 65 N. W. 265;
City of St. Paul v. Colter, 12 Minn. 16 (41), 90 Am. Dec. 278. Con-
sequently the test to be applied here is. whether or not chapter 157,
p. 444, Sp. Laws 1878, was in fact a part of the charter of the city
of Minneapolis.

It is true, as urged by plaintiff, that the corporate entity of de-
fendant is separate and distinct from that of the city, but that fact
alone does not establish the invalidity, as applied to defendant, of
the prohibition found in the act amending the charter of the city.
For the purpose of imposing regulations upon the public corporations,
whether organized under general or special acts of the legislature, it
has never been held necessary to refer specifically to each corporation
or the general or special law under which it was incorporated. It
is sufficient if the title of the act is broad enough to include such
corporation, and not of a character which would mislead or furnish
a cover for secret legislation (State v. Cassidy, 22 Minn. 312, 21
Am. Rep. 765), and in cases of conflict between special and general
enactments the intent of the legislature would be controlling. State
v. Sullivan, 62 Minn. 283, 64 N. W. 813.

2. The constitution of the state provides for a uniform system of
public schools, and by chapter 14, p. 263, R. L. 1905, the legislature

has carried into effect the constitutional provision. Section 1280 divides the state for school purposes into common, special, and independent school districts, each of which is a public corporation. This law had its origin in chapter 74, Laws 1877, section 1 of subchapter 1 of which provided: "Every common school district in this state, now established, or which may be hereafter formed, set off or established, and every independent and special school district now organized or created, or that may hereafter be organized or created under any law of this state, is hereby declared to be a body corporate, with power to contract or be contracted with, sue and be sued, in any court of this state having competent jurisdiction." Section 2 classified school districts into common, independent, and special; and section 1 of subchapter 7 of the act exempted from the provisions of the chapter municipalities having special laws regulating its schools.

By these provisions the uniformity in school districts required by the constitution was provided, and any procedure which established the territory included within the city of Minneapolis as an independent or special school district would have resulted in making such school district a public corporation, as provided by the general law. In other words, the provisions of chapter 157, p. 144, Sp. Laws 1878, declaring the board of education of the city of Minneapolis to be a corporation, established no different relation between it and the city than that found between every other school district and the particular governmental subdivision to which it was confined. The effective special provisions were those providing for the number of school inspectors, the time and manner of their election, and similar incidents connected with the management of the district. How far the legislature might have gone in granting special powers to defendant we will not attempt to say. It seems clear that the only thing the legislature did attempt was to organize an independent or special school district comprising the city of Minneapolis in harmony with the constitution and the general laws of the state.

The title of the act of 1878 was "An act relating to the government of free schools in the city of Minneapolis." It might as well have been entitled "An act relating to the department of education in Minneapolis." Under that title it would be very clear that the

enactment formed part of the city charter. The maintenance of public schools in conformity with the constitution of the state is one of the public duties imposed upon the various governmental and administrative divisions of the state, and in carrying out that duty it is immaterial whether or not a distinct legal entity is brought into existence for the purpose of securing the performance of the duty. The entity, when so created, is charged with duties and responsibilities as is an individual public officer, and cannot interpose a purely artificial barrier as a reason for a refusal upon its part to perform its duties in accordance with declared public policy.

3. A very similar question was considered in City of Winona v. School District, 40 Minn. 13, 41 N. W. 539, 3 L.R.A. 46, 12 Am. St. 687. The territory within the corporate limits of Winona was constituted a school district by chapter 155, p. 432, Sp. Laws 1878. To some extent that law differed from the Minneapolis law. Chapter 157, p. 444, Sp. Laws 1878. In Winona the title to school property was held in the name of the city; in Minneapolis in the board of education. The city council levied the taxes in Winona; the school board fixed the amount of the levy in Minneapolis. In each case the school district was declared to be a corporation, but that, as already said, was provided for by the general laws. There were other provisions in the Winona act extending the control of the city council over the school board, and after referring to them this court said (page 14 of 40 Minn., page 540 of 41 N. W. [3 L.R.A. 46, 12 Am. St. 687]): " *   *   * These and other provisions of the act which might be referred to show beyond all doubt that its purpose was to adopt a policy, and not a mere arbitrary geographical line, and that this policy was to establish a uniform school system, not for the territory then happening to be within the city, but for the city, whatever its area might be, whether enlarged or diminished in the future; and that the board of education although invested with certain limited corporate powers, should be one of the departments of the city government, much like a board of public works or park commissioners,   *   *   * " and an act of the legislature entitled "An act to amend the charter of the city of Winona" (Sp. Laws 1887, p. 240, c. 5) was held to have extended

the limits of the school district, as well as those of the city, so as to include territory previously within another district; the title to school property of the outside district remained as originally vested. While the Winona and Minneapolis school methods differed in certain respects, we do not think these differences affect the question as to the relation which a school district bears to the municipality it serves.

Plaintiff relies largely upon State v. Porter, 53 Minn. 279, 55 N. W. 134, which was this: The municipal court of the city of Mankato was organized under a special act. Chapter 119, p. 349, Sp. Laws 1885. In subsequent acts each entitled either "To amend" or "To amend and consolidate" the charter of Mankato, the term of office of the municipal judge was attempted to be changed. It was held that the act creating the court was not a part of the city charter, and the inclusion of amendments to that law in an act, the title to which referred only to the charter, was invalid. The municipal court when established was not a department or administrative agency of the city. It was created by the legislature as an addition to the judicial department of the state, and possessed to a limited extent the judicial power of the state. It was a court of record having jurisdiction coextensive, not with the city of Mankato, but with Blue Earth county, and, while it had considerable direct relation with the city, it could not be said to be performing exclusively a municipal function. When carefully considered, the Porter case is not in conflict with the holding in the Winona case.

4. It is proper also to call attention to other subsequent legislation affecting defendant's status. By chapter 59, p. 173, Sp. Laws 1879, consolidating the cities of St. Anthony and Minneapolis the city treasurer is made ex-officio treasurer of the school board, the city comptroller is also charged with certain duties toward the school board. Plaintiff calls attention to the fact that at the same session of the legislature the act incorporating the school board (chapter 157, p. 444, Sp. Laws 1878) was amended by chapter 62, p. 183, Sp. Laws 1879, and therein were included provisions also imposing those duties upon the treasurer and comptroller respectively. This is claimed to amount to a legislative declaration that the school board

act could only be amended by an enactment, the title of which referred directly to it. We think it only shows that those desiring the amendment were careful to avoid any question as to the validity of the amendment. In addition, a further examination of chapter 62, p. 183, Sp. Laws 1879, shows a recognition of the relation which the school board bears to the municipality. The treasurer is required to deposit the school funds in banks selected by the city as depositaries of funds of the city, and that the moneys so deposited should, for the purposes connected with such deposit be regarded as the moneys of the city. Entirely without regard to the relation which the two corporations bore to each other under the act of 1878, chapter 62, p. 183, Sp. Laws 1879, directly amending that act, emphasized the fact that the board of education was created solely to perform a municipal function of the city.

5. It is urged that, even if the contract between the board of education and the plaintiff was illegal, the board having received the value of plaintiff's services will not now be heard to allege its own lack of authority in defense. If the board of education was a private corporation, we would have no difficulty in so holding, for the high professional attainments and standing of plaintiff, as each member of this court can vouch, make it plain that his services were of value even if the stipulation of facts did not concede such value. The rule in the case of private corporations as to liability upon ultra vires contracts which have been executed by one party is thoroughly well settled, not only in this state, but practically everywhere, and is well stated in the syllabus to Whitney v. Barlow, 63 N. Y. 62, 20 Am. Rep. 504: "The plea of ultra vires as a general rule will not prevail, whether interposed for or against a corporation, when it will not advance justice, but on the contrary will accomplish a legal wrong." But this rule does not extend to contracts with public corporations, as sound public policy requires that public officers should be limited to the powers actually conferred upon them, and, if the rule which applies to the ultra vires contracts of private corporations was extended to those which are public and governmental, the result would be to nullify a multitude of legislative restrictions which experience has shown to be absolutely necessary. Thus, munic-

ipal offices might be multiplied indefinitely, laws requiring contracts to be in writing, and many other restrictions entirely avoided.

We think this question is definitely settled by the former decisions of this court. In Borough of Henderson v. County of Sibley, 28 Minn. 515, 11 N. W. 91, the rule is clearly stated. In that case the borough of Henderson had entered into a contract with the county, whereby it was to have the use of a portion of the county courthouse, and for that consideration actually contributed towards the erection of the courthouse the sum of $5,000. This court held the contract to be beyond the power of the county, void and unenforceable, but held, further, that the borough might maintain an action to recover back the $5,000 which it had actually paid to the county. This was not enforcing the provisions of a contract ultra vires when entered into, but made valid and binding by part execution, but was, upon the contrary, holding that the invalidity of the contract continued, and that the county obtained no title to funds paid into its treasury under such contract. The same distinction as to the rule applied to private and public corporations was reiterated in Wolford v. Crystal Lake Cemetery Assn., 54 Minn. 440, 56 N. W. 56. It was again stated in Farmer v. City of St. Paul, 65 Minn. 176, 67 N. W. 990, 33 L.R.A. 199. But in the latter case it was held that a court of equity would not interfere by injunction to prevent the payment of a claim which was meritorious in itself. If this was an action to restrain the board of education from paying to the plaintiff the reasonable value of his services we would feel justified in following the decision in Farmer v. City of St. Paul. These decisions are in harmony with that rendered in Chapman v. County of Douglas, 107 U. S. 348, 2 Sup. Ct. 62, 27 L. ed. 378. That case was this: The county purchased real estate, and executed a mortgage to secure the unpaid portion of the purchase price. The supreme court of Nebraska held the county to have been without authority to execute the mortgage. Because of that decision, which it appeared had been accepted by all parties to the action, in the federal court it was concluded that the county held the title to the land as trustee, and it could be required to release title. This decision was rendered after the decision of this court in Borough of Henderson v. County of Sibley, supra, and we think the prin-

ciples enunciated in it are identical with those sustained by this court in the Henderson case.

Judgment affirmed.

JAGGARD, J.

I dissent.