## STATE EX REL. J. S. SAARI AND ANOTHER v. STATE SECURITIES COMMISSION OF MINNESOTA.[1]

### May 13, 1921.

### No. 22,252.

**Appeal and error — scope of review of action of Securities Commission.**

In reviewing the action of the State Securities Commission denying an application for a certificate authorizing a state bank to transact business, this court cannot interfere, unless it appears that the commission failed to keep within its jurisdiction or proceeded on an erroneous theory of the law or acted arbitrarily, oppressively and unreasonably, so that its determination represents its will and not its judgment, or is without evidence to support it. The facts disclosed by the evidence recited in the opinion do not warrant the conclusion that the commission exercised arbitrary power instead of its candid judgment in denying the application.

Upon the relation of J. S. Saari and others the supreme court granted its writ of certiorari directed to the State Securities Commission to review its order denying the application of relators for a certificate authorizing a bank to transact business in the village of Gilbert. Affirmed.

*Christofferson, Christofferson & Jackson* and *O. J. Larson,* for relators.

*Albin E. Bjorklund,* for respondent.

LEES, C.

Certiorari to review an order of the State Securities Commission denying the application of J. S. Saari and others for a certificate authorizing a state bank to transact business in the village of Gilbert.

The commission found that there was no reasonable public demand

[1]Reported in 182 N. W. 910.

for the proposed bank, and that the probable volume of business in Gilbert did not appear to be sufficient to insure and maintain the solvency of the proposed bank and of the existing bank. The order denying the application accordingly followed and is challenged on the ground that it is arbitrary, oppressive, unreasonable, and not the result of an impartial judgment based on the evidence, which we will summarize:

About 3,500 people live in Gilbert and about 2,500 in the territory which in some degree is tributary to Gilbert for business purposes. Within or close to the village there are several iron mines employing many miners. There are some small farmers living nearby. The combined annual payroll of the mines is about $2,700,000. The public schools in or near Gilbert employ about 100 teachers, whose annual salaries aggregate approximately $240,000. The assessed valuation of the village is $5,840,000, and, if all the banking territory of the village is included, the valuation is over $8,000,000. There is but one bank, the First National. It has a capital of $30,000 and a surplus of $25,000. Its average deposits aggregate $500,000 or more. Virginia and Eveleth are large prosperous towns within a few miles of Gilbert, with excellent communications by steam railway, trolley and public highways. More than $100,000 is deposited in banks in these two towns by people who live in or transact business at Gilbert.

The organizers of the proposed bank include 13 business men from Gilbert, seven from Eveleth, three from McKinley and one from Virginia, also two farmers, five laborers, and one miner, living near Gilbert. Mr. Saari is the president of a state bank at Eveleth. One of his associates is cashier of this bank and another was formerly cashier of a bank at Virginia. It was proposed to organize the new bank with a capital of $25,000 and a surplus of $7,500.

In 1912 there were two banks at Gilbert, the First National and a state bank, with combined deposits of upwards of $250,000. In that year the First National absorbed its rival. It now has 1,200 or 1,300 depositors. There is no direct evidence of dissatisfaction with the banking facilities it affords or with its treatment of patrons. Dissatisfaction may be inferred from the fact that it has declined to cash a portion of the outstanding village orders, of which there are many, and that a majority of the organizers of the proposed rival bank are residents of

Gilbert and presumably present patrons of the First National. The annual dividend rate of the First National up to 1913 was 6 per cent. From then until some time in 1916 it paid no dividends. From 1916 until the beginning of 1919, its dividend rate was 6 per cent and since then has been 8 per cent. There is some evidence that the mines at Gilbert are curtailing operations and that the village is not growing. There is also evidence to the contrary. It was shown that at a cost of $50,000 the First National Bank has recently constructed a building for its exclusive use. We have not attempted to refer to everything disclosed by the evidence. These are its salient features, and from a consideration of them the commission came to the conclusion already stated.

Counsel for the relators make a vigorous attack on the findings. They contend that an impartial consideration of the undisputed evidence will demonstrate that the commission acted arbitrarily and capriciously in denying the application, and that the opposition has been worked up by the officers of the First National Bank in order to retain the monopoly of the banking business in Gilbert, which it has enjoyed since 1912. On the other hand, counsel for the respondents insist that the evidence shows that Mr. Saari and his immediate associates are seeking to create an artificial demand for another bank, which is neither needed nor wanted at Gilbert, and that there is no genuine local sentiment in favor of its establishment.

Our examination of the record has led us to conclude that the real controversy is over the inferences which may properly be drawn from the evidence. In a review of the action of the commission, the field of inquiry is limited. We do not have the same latitude as in reviewing judicial proceedings. Responsibility for the findings of fact rests on the commission. Though we may not agree with its conclusions, we cannot interfere, unless it appears that it has not kept within its jurisdicion or has proceeded upon an erroneous theory of the law, or has acted arbitrarily, oppressively and unreasonably, so that its determination represents its will and not its judgment, or is without evidence to support it. State v. State Securities Commission, 145 Minn. 221, 176 N. W. 759. The evidence would have justified findings contrary to those made, but is not so inconsistent with them as to warrant us in holding that the com-

mission exercised arbitrary power instead of its candid judgment in denying the application.

Order affirmed.