# STATE EX REL. GEORGE A. PINE v. BOARD OF EDUCATION OF CITY OF DULUTH AND OTHERS.[1]

March 21, 1924.

No. 24,055.

**Statutes applicable to elections in Duluth for issue of school bonds.**

1. The board of education of Duluth, incorporated by Sp. Laws 1891, c. 312, is a department of the city government, having certain special powers conferred by the act creating it, following State v. West Duluth Land Co. 75 Minn. 456; and Laws 1923, c. 305, creating the office of commissioner of registration in home rule charter cities having a population of more than 50,000, of which Duluth is one, and requiring registration at all "general, special, school or primary elections, both state and municipal," applies to school elections in Duluth upon the question of the issuance of bonds.

**Registration of voters constitutional.**

2. Reasonable requirements of registration are constitutional. Chapter 305, Laws 1923, prohibits a qualified voter from voting at an election unless he is registered. It gives no opportunity for registering within the 15 days immediately preceding an election. The Constitution provides that a citizen of the United States for three months, residing in the state six months and in the precinct 30 days prior to the election, is a qualified voter. The provision of the statute that he cannot vote unless registered, though he cannot register within the 15 days immediately preceding an election, is constitutional.

**Registration act constitutional.**

3. That the registration act requires registration 15 days before an election, while the special school district act makes residence in the voting district for 10 days a sufficient qualification for voting does not make the act inapplicable. When bonds are submitted to the voters the submission is to the qualified legal voters and qualification is determined by the Constitution.

**Statute requiring two-thirds vote inapplicable.**

4. G. S. 1913, § 1861, providing in certain cases for a two-thirds vote of the legislative body of the city in which the district is wholly

[1]Reported in 197 N. W. 964.

or in part situated authorizing the issuance of the bonds, is without application to any question on this appeal which is concerned only with the application of the registration act to school elections in Duluth.

Upon the relation of George A. Pine the district court for St. Louis county granted its alternative writ of mandamus directing the Board of Education of Duluth and its officers to comply with the provisions of Laws 1923, c. 305, in holding and conducting a special school district bond election. From an order, Fesler, J., granting respondents' motion for judgment on the pleadings in favor of respondents, relator appealed. Reversed.

*Spencer J. Searls*, for relator.
*George H. Spear*, for respondents.

DIBELL, J.

An alternative writ of mandamus was issued by the district court to compel the board of education of Duluth and its officers to proceed with an election appointed to be held on March 25, 1924, upon a proposal for the issuance of bonds, in accordance with Laws 1923, p. 416, c. 305, providing for the registration of voters in home rule cities having a population of more than 50,000. The trial resulted in judgment for the defendants, and the relator appeals.

The question is whether voters must register. It is the contention of the board of education that they need not. Its two claims calling for particular consideraion are:

(1) That the board is an independent body and not a department or part of the city so as to come within the application of the registration statute.

(2) That the registration statute is unconstitutional.

Incidentally there is considered (3) the provision of the school-district act giving a right to vote upon 10 days' residence in the voting district, and (4) the effect of G. S. 1913, § 1861, providing for a two-thirds vote by the legislative body in certain instances authorizing the issuance of bonds.

1. Chapter 305, p. 416, Laws 1923, creates the office of commissioner of registration in all cities having a population of more

than 50,000 inhabitants governed by home rule charters· Duluth comes within the class. Section 2 defines elections as follows:

"For the purposes of this act the word 'elections' wherever used, shall be held to mean general, special, school, or primary elections both state and municipal."

The board of education was created by Sp. Laws 1891, p. 931, c. 312. The territorial limits ·of the district, as therein defined, were those of the city of Duluth when its plan of territorial expansion then in progress should be accomplished, as later it was. The school-district limits included but exceeded the then limits of the city.

The act incorporating the board is entitled:

"An act for the formation and to fix the boundaries of the independent school district of the city of Duluth, in St. Louis county, Minnesota, and to provide for the election of members of the board of education of said district and define the powers of the board."

It provides for 9· elective directors, for their election, for elections upon the question of the issuance of bonds, and gives the board general direction of the school affairs of the district. No registration preliminary to election is required. The board is made the "legal successor of the board of education of the independent school district of Duluth, as the same is at present formed and constituted." Duluth had long been an independent school district under special acts antedating the special act of 1891, which repealed former special acts though in general retaining their substance, and made applicable the general school laws. The act furnishes but a framework for the administration of the schools. Section 13 is as follows:

"Upon and after the passage of this act said board of education of the city of Duluth shall be governed by the provisions of the general laws of the state of Minnesota governing independent school districts, not inconsistent with the provisions of this act, and by the general school laws of the state of Minnesota not inconsistent with this act and with the laws of Minnesota governing such independent school districts, and all special acts heretofore passed

for the government of the board of education of the independent school district of Duluth and inconsistent with this act are hereby repealed; provided, that the repeal of any such acts shall not affect any rights acquired or penalties incurred or proceedings begun under any of said repealed acts."

When the board of education was created in 1891 the Constitution by an amendment adopted in 1881 prohibited special laws "for granting corporate powers or privileges, except to cities." Const. art. 4, § 33, subd. 7. In State v. West Duluth Land Co. 75 Minn. 456, 78 N. W. 115, there was involved the validity of a tax levy made by the board. It was attacked upon the ground that the board was not constitutionally created. The court held that the creation of the board by special act as a wholly separate entity, apart from the city, would contravene the Constitution; but that the board was really a part of the city organization and that the grant of powers to it was constitutional. The court said, at page 468:

"At the time of the enactment of chapter 312, supra, which was approved and took effect April 14, 1891, the state constitution (subdivision 7, § 33, art. 4) prohibited special or private laws 'for granting corporate powers or privileges, except to cities.' This subdivision forbade the granting of corporate franchises—that is, franchises by acts of incorporation—except to cities, and so the inquiry is, was a prohibited franchise granted when the act was passed? If so, the law must be held to be within the inhibition."

And at page 469:

"And the legislation was in fact for a city. Chapter 312 simply provided that the city of Duluth should be an independent school district, its board of directors to bear the corporate name of 'The Board of Education of the City of Duluth.' Provision was made for the annual election of members of the board from among the qualified electors of the district, and, as a consequence, of the city; and their duties and powers were prescribed. This entire act could have properly been made a part of the city charter, for under it the schools of the city are nothing but one of its executive departments."

And at page 470:

"That chapter 312 was nominally an independent act, and not in terms made a part of the city charter, through an amendment or otherwise, cannot affect the fact that the powers and privileges therein granted and conferred were to a city and for city purposes, and therefore that there was no infringement upon the constitution as then framed."

In 1891 and at many sessions of the legislature prior thereto school districts were created by special act. It was common practice. The constitutional amendment proposed in 1891, and ratified in 1892 prevented their further creation. Const. art. 4, § 33.

Not all authorities agree with the construction placed upon the restrictive provision of the Constitution quoted. Some would not so apply it when there is involved the creation of or grant of powers to a quasi municipal corporation such as a school district. It seems, too, that the validity of the school district, as a separate entity, might have been sustained by the application of the principle announced in Brady v. Moulton, 61 Minn. 185, 63 N. W. 489, and State v. Wiswell, 61 Minn. 465, 63 N· W. 1103. In these cases, following the holding in Wisconsin from which the constitutional provision came, it was held that a grant of power to an existing corporation was not in contravention of the Constitution. The independent school district of Duluth was at the time of the enactment of the 1891 special act the result of a number of special acts. This act did little more than restate and in some respects change their provisions. The difficulty of applying the principle of the two cases, with a resultant holding that the 1891 act was a constitutional grant of power, and that the school district remained an entity distinct from the city, is not apparent. But this was not done. The holding in State v. West Duluth Land Co. is decisive that the board of education is a department or component part of the city government, and that unless so the grant of powers to the school board was invalid. It cannot be disregarded. The board is a corporation, a school district, having distinct powers of its own. Still it is so much a part of the city that a grant of power to it

permissible under the Constitution only to cities is valid. Something of the nature of the school districts of the state and their relation to the municipalities whose population they serve is found in Jackson v. Board of Education, 112 Minn. 167, 127 N. W. 569, Schroeder v. City of St. Paul, 115 Minn. 222, 132 N. W. 317, and State v. City of St. Paul, 128 Minn. 82, 150 N. W. 389.

The board of education or the independent school district of Duluth was not mentioned in the early charter of Duluth. Sp. Laws 1887, p. 57, c. 2. Section 4 of the 1900 home rule charter made the newly-created city the legal successor of the city under its former charter, with all its franchises and rights, except as otherwise provided. And all property of the old city vested in the new, and all indebtedness, obligations and liabilities of the city under the former charter, or any board or department, were assumed by the city under the new charter; but it was provided that "this section shall not apply to the independent school district of Duluth." There is no other reference to school affairs in the 1900 charter. There is none in the 1912 charter, but it provides that the city "shall have and exercise all powers, functions, rights and privileges possessed by the city of Duluth prior to the adoption of this charter."

The enabling act of 1899, Laws 1899, p. 462, c. 351, § 2, provided that the charter when ratified should "become the charter of such city or village as a city and supersede any existing charter and amendments thereof." The enabling act of 1903, Laws 1903, p. 355, c. 238, § 9, provided:

"But it shall be lawful for such board in framing any such charter or amendment, to omit therefrom provisions in reference to any department which, prior to the framing thereof, is administered under any existing special or general law of this state and in such event, such department shall continue to be so administered notwithstanding the adoption of such charter."

Here is a recognition that an activity which might be administered with propriety by the city under its charter might be left to administration under a valid special act. So, in the West Duluth Land Co. case, it was held that the special school district act, though

it might well enough have been incorporated in the charter, might be separately administered as a city department. And see Jackson v. Board of Education, 112 Minn. 167, 127 N. W. 569.

The powers exercised by the school district or the board of education did not cease on the ratification of the home rule charter of 1900 or that of 1912. They existed somewhere. They could not have remained as powers of a wholly independent school district, created under the special act of 1891, if the West Duluth Land Co. case is followed, for such an incorporation was inhibited by the Constitution as a separate entity though sustainable as legislation for the city. It might, perhaps, be held that there was a de facto school district of some kind. That would bring worse confusion. The school district continued as a department or component part of Duluth, under its home rule charters, and is now such. Under this construction the registration act applies to Duluth as it applies to Minneapolis and St. Paul, the other two cities of the class.

2. The basis of the claim that the registration statute is unconstitutional is that it unreasonably restricts the right to vote. Section 3 of the 1923 act provides:

"From and after the first day of January, 1924, no qualified voter shall be permitted to vote at any election unless such voter shall register as provided in this act."

Section 8 provides:

"The commissioner of registration shall have 15 full days between the last day of registration and election day, to perfect his Election Registers and for that purpose 15 days before any election day shall be days upon which voters may not register."

The Constitution provides that a citizen of the United States, who has been such for three months, and "who has resided in this state six months next preceding any election, shall be entitled to vote at such election in the election district in which he shall at the time have been for thirty days a resident, for all officers that now are, or hereafter may be, elective by the people." [Art. 7, § 1].

It is the contention of the board that the act of 1923 in disqualifying qualified voters under the Constitution from voting in the event that they do not register at least 15 days before the election is an unreasonable limitation and is unconstitutional. That the legislature may provide a system of registration, although the Constitution authorizes none, is not in doubt. It must be such as not unreasonably to interfere with the right of a qualified voter to vote. Cases differ as to what limitations may be properly imposed through the requirement of registration. Many of them are collected in 20 C. J. 81; 9 R. C. L. 1036, §§ 52-55; 25 L. R. A. 480; Paine, Elections, § 340; McCrary, Elections, §§ 126-138. In our judgment the limitation placed upon the constitutionally qualified citizen by the registration act of 1923 is reasonable and the statute constitutional.

3. The board urges that the 1923 act is without application for the reason that it requires registration 15 days prior to an election and the school district act of 1891 requires, as a qualification for voting, only 10 days residence in the precinct next preceding the election The argument is without force. Section 6 of the 1891 act requires a residence within the state for four months and within the election district for ten days next preceding the election. The Constitution fixes the qualifications of voters. At the time of the enactment of the special act the Constitution required residence in the state "for four months next preceding any election," and residence in the election district "for ten days." Full citizenship was not required. The special act followed the Constitution. It cannot be claimed that the provision of the school district act fixes the qualifications of voters contrary to the later constitutional provisions now in force. A submission to popular vote without limitation is a submission to constitutionally qualified voters.

4. The relator claims that G. S. 1913, § 1861, which provides that no independent school district having a population of more than 50,000 shall issue any bonds unless first authorized by a two-thirds vote of the legislative body of the city within which the school district is situated in whole or in part, supports his contention

that there was a legislative purpose to merge the school district in the city. The construction or application of this statute is not involved on this appeal which is concerned only with the application of the 1923 registration act.

Some other points, including a claim that the title of the 1923 act is insufficient, are made. They do not call for discussion. Our conclusion is that only voters who registered under the 1923 act can participate in the March 25, 1924, school election.

Nor need there be much hardship or confusion from this result· There may be some little inconvenience until the voters and officials become adjusted to the requirements of the registration act. Efficient administration will make it negligible.

Our conclusion has been reached after such consideration as the requirement of an early decision permitted. We have not been in entire unanimity, but a majority agree upon the two points decisive of the case, that is, that the registration act under a proper consruction applies to school elections in Duluth, and that it is constitutional.

Judgment reversed.