## ANDREW LINDQUIST v. WILLIAM A. ABBETT AND OTHERS.[1]

January 24, 1936.

Nos. 30,479, 30,483.

[1]Reported in 265 N. W. 54.

*H. C. Fulton* and *George H. Spear,* for individual appellants.

*Mitchell, Gillette, Nye & Harries* and *W. O. Bissonett,* for appellant Hartford Accident & Indemnity Company.

*Jenswold, Jenswold & Dahle,* for respondent.

*Abbott, MacPherran, Dancer, Gilbert & Doan, amici curiae,* filed a brief in support of the contention of appellants.

STONE, JUSTICE. .

Defendants appeal from orders denying their several motions for amended findings or a new trial.

This is a taxpayer's action. Defendants Abbett, Andresen, Coole, Knight, Haney, and Wakeman are six of the nine members of the board of education of the city of Duluth. Defendant Hartford Accident & Indemnity Company is surety for defendant Coole as treasurer of the school district. Defendant Spear is a member of the Duluth bar. The purpose of the action is to compel restitution to the school treasury of a substantial sum which plaintiff alleges was wrongfully paid therefrom to defendant Spear for professional services. Two smaller items are also involved, which will be treated separately.

By Sp. L. 1891, c. 312, "the board of education of the city of Duluth" was incorporated as an independent school district, its territory the same as that of the city. Section 13 subjects the school district to the general school laws of the state (as far as they are not inconsistent), particularly those concerning independent school districts. The district owns and maintains something like 40 school plants, including a junior college. Its property is said to be worth around $9,000,000. The 1930 tax levy was $2,829,384. There are about 1,000 employes, including 700 teachers. The students number upwards of 22,000. The magnitude of the administrative organization is indicated by these facts. The clerk has six assistants, inclusive of two stenographers. In the "administration offices" are 19 or 20 clerks and some 15 or 16 additional in the schools.

Mr. Spear did all legal work for the district from sometime before 1923 until the commencement of this action. In August, 1923, a resolution was adopted by the board under which "all matters of a legal nature" were thereafter to be referred to him as attorney. The practice was to pay him at the rate of $350 monthly or $4,200 yearly. He submitted no bills but drew his compensation monthly. There was nothing contractual to prevent the termination of Mr. Spear's services at any time upon proper notice. His employment, as far as it rested in contract, was one from month to month rather than from year to year.

Decision below went against the individual defendants. The findings segregate Mr. Spear's legal from his nonlegal services and allow him compensation *(quantum meruit)* for the former. The result was an order for judgment against defendants, other than the board itself, for $2,937.72, in which sum the board was held entitled to restitution.

■ In 1910 the attorney general's office ruled that it was "not competent" for a school district "to hire an attorney by the year." The opinion recognizes, however, that one may be retained "for the performance of any particular service which is necessary, and such hiring can properly be made by the adoption of a resolution to that effect." That ruling, we are advised, has been followed ever since.

In that connection, 1 Mason Minn. St. 1927, § 2848, is cited for plaintiff. It reads thus:

"If any difference of opinion arises between school officers, or any doubt as to the proper construction of any part of this chapter, or as to their powers or duties, the state superintendent, at the request of any such officer, shall submit such question to the attorney general, who shall give his written opinion thereon to such superintendent, and such opinion shall be binding until annulled or overruled by a court."

It would probably be enough, in answer to the argument for plaintiff based upon that statute and the rulings of the attorney general, to observe that the latter's opinions were not addressed to the state

superintendent of education. But it should be noted that, while opinions of the attorney general have great weight, not only because of their origin, but also because of their effect as a practical construction where a statute is involved (County of Hennepin v. Ryberg, 168 Minn. 385, 210 N. W. 105), it was certainly not the intention of the legislature to confer upon the attorney general, an executive officer, the legislative duty of making law or the judicial function of interpreting it. Hence, aside from whatever effect an opinion of the attorney general, procured pursuant to § 2848, may have as protection for officers operating under it, it can never have the effect of foreclosing, as against judicial action, a question of statutory construction.

■ The trial judge rightly rejected the argument that "the board of education is but a department of the city of Duluth"—so much so that the city attorney is *ex officio* attorney for the board, which, in consequence, has no authority "to employ an outside attorney." That view is based upon mistaken appraisal of the decision in State v. West Duluth Land Co. 75 Minn. 456, 469, 78 N. W. 115, 118. The special law, which is the charter of the district, was there challenged as a violation of the then constitutional provision prohibiting "special or private laws for granting corporate powers or privileges except to cities." The prohibition did not apply, it was held, because "this entire act could have properly been made a part of the city charter, for under it the schools of the city are nothing but one of its executive departments. * * * the powers and privileges therein granted and conferred were to a city and for city purposes, and therefore * * * there was no infringement upon the constitution." For long before that decision and the special act itself, the Duluth school district had been an entity distinct from the city. The decision in the West Duluth Land Co. case is criticized but followed in State ex rel. Pine v. Board of Education, 158 Minn. 459, 463, 197 N. W. 964, 966. The point of the criticism is that there was in the earlier case no real obstacle to a holding that "the school district remained an entity distinct from the city." Notwithstanding, the view was reaffirmed that "the board of education is a department or component part of the city

government." But, as Mr. Justice Dibell went on to say [158 Minn. 463]: "the board is a corporation, a school district, having distinct powers of its own."

The fact of its own independent corporate existence cannot be denied. By statute, 1 Mason Minn. St. 1927, § 2742, every school district in the state is declared "a public corporation." That the powers granted the board are to be exercised by it, to the exclusion of all city officials, is equally plain. As a matter of corporate status and its incidents, the school district in law and fact exists and functions separately from the city. The school district might well have been amalgamated with the city in corporate organization but was not. The result is two corporations where there might have been one.

In the special law which is the charter of the school district, there is nothing to indicate that the members of the board of education or any other officers of the district were to look to the legal department of the city for such counsel and other legal aid as surely would be needed from time to time.

Not conclusive but relevant is the absence from the city charters (during the period since the special law was enacted the city has had two) of any indication that it would be part of the city attorney's duty to serve the school district. The city has its own appropriate departments created by the charter. For them, but without mention of schools or school district, the city attorney is expressly made legal adviser.

■ Coming now to the main question whether the board had the power to employ an attorney in the manner followed in retaining Mr. Spear, enumeration of the expressly granted powers of the district is unnecessary. It is sufficient that for the most part they are general and highly important, their weight upon the responsible officials increasing in proportion to the school population and educational activities involved. They include the power to acquire and dispose of both real and personal property. Rooms for school purposes may be leased. 1 Mason Minn. St. 1927, § 2815(4). Although otherwise and necessarily implied, the right to "prosecute and defend actions by or against the district" is expressly given

the board. 1 Mason Minn. St. 1927, § 2815(11). That probably explains why the power generally to employ an attorney is conceded, as it must be. Power to employ established, it is difficult to negative the right to make any reasonable contract with an attorney for his services. Given the power to employ, how comes it that the manner of employment is restricted?

The power comes from the statute, which is silent as to the manner of its exercise. It must follow then, and we so hold, that the terms of employment are left to the discretion of the school board. That discretion being executive, its exercise is not subject to review generally by the judiciary. There may arise cases where its exercise, when challenged in appropriate litigation, will appear to have been in bad faith, or so unreasonable as to be arbitrary and capricious and, hence, beyond the power granted. It will be time enough to consider such an issue when it is presented. It is not here.

The board of directors of any private corporation of the magnitude, importance, and pervasive contacts which characterize the Duluth school district would, as matter of business sense and safe administration, require the services of counsel. The usual thing would happen. The executive head would select some lawyer having the confidence of the management and retain him upon an annual basis. If a firm were chosen, probably the understanding would be that some one member of it would be assigned to be individually responsible for the prompt and satisfactory handling of all matters of the corporation submitted to him. Business men are averse to being shunted from one lawyer to another simply to suit the convenience of others. Their desire is for some one adviser to whom they can go when occasion arises and get prompt and dependable answers to their questions. They want advice backed not only by knowledge of the law but also by experience with the other "nonlegal" factors so often present in the problems submitted by business men to their lawyers.

The evidence makes it appear that the hypothetical case of the private corporation indicates the precise status in which the members of the defendant board found themselves when they first re-

tained Mr. Spear. It is beyond our competence to find in their attitude and action anything surprising, to say nothing of such elements of arbitrary or capricious action as to indicate that they went beyond their lawful power. We cannot find anything illegal in the manner of Mr. Spear's employment and payment. We cannot agree in the distinction made below between what were supposed to be his "legal" and "nonlegal" services. Once a lawyer becomes familiar with the affairs of an important and continuing client, he is constantly advising on matters which may involve both questions of law and fact. Many courses of action which are legal are unwise. The lawyer who in vouching for their legality does not at the same time point out their lack of wisdom, if it be known to him, is an incompetent adviser. In so counseling, he does not by so much cease to be a legal counselor. His knowledge of the law is not the only thing wanted. Frequently more important is his knowledge, gained from experience, of how the law works in application to the affairs of men. In some cases corporations desire their counsel to become specialists in their affairs. It is probable that the defendant board deliberately tried to make Mr. Spear a specialist in the affairs of the Duluth school district. If so, they were but following an approved practice of well-managed, private business. There is no law which condemns them for so doing simply because they happen to be managing a school district.

Apparently it was considered to be Mr. Spear's duty, anyway it was his custom, to be present at every board meeting. The members wanted to be sure of the legality of their action as they went along and were attempting to avoid the delay which often ensues if a matter must wait until it can be referred to absent counsel and his opinion procured. Then there is often a choice, already mentioned, to be made between two or more routes of action, all of which may be legal, but one altogether the more desirable for some reason only an experienced lawyer may know. So the criticism of Mr. Spear's presence at all board meetings is baseless. No one has yet condemned the municipal practice that requires the city or village attorney's presence at meetings of the council. That custom is no more to be condemned in the case of defendant board. It is

charged with public affairs more weighty and complex than those of most cities of the state.

It is of no significance that the conventional city or village charter expressly authorizes the employment of an attorney. Take away such express grant, the power would yet come by implication from the very necessity of the case. For decision by the council would be the terms of employment. That decision could not be reversed or modified by judicial action on such evidence as we have here. Such executive decisions are not interfered with by the courts merely because they are based upon or involve mere errors of judgment. Without suggesting such error here, it is pertinent to observe that executive officers as well as judges have a power to decide erroneously as well as rightly. There is a wide field wherein their decision, even though wrong, is final. The same is true of judges, the sum of whose errors will be kept somewhere near an irreducible minimum in proportion as they refrain from attempts to decide issues which constitutional and statutory law have committed to the legislative and executive departments of government.

■ The two smaller items of expenditure challenged by plaintiff are these. In December, 1930, Mr. K. M. Harris, employed by defendant board as director of recreation, was authorized to attend, at the expense of the district, a meeting of the "Civic and Recreational Representatives" held in connection with the annual convention of the League of Minnesota Municipalities. He attended at Minneapolis. His expense was $23.30. In similar fashion, in 1931, Mr. G. A. Swanson, employed as truant officer, was authorized to and did attend the National Convention of Social Workers held in Minneapolis in June, 1931. His expense, paid by the board, was $41.70. Before starting on the journey, the treasurer advanced him $50, the unspent portion of which he refunded upon his return to Duluth. Both Messrs. Harris and Swanson testified. Their functions, in so large a district, are varied and important. The cross-examination of Mr. Harris added confirmation, if any were needed, of the wisdom of his journey. Upon direct examination, he had told about the extensive recreational program conducted in connection with the Duluth schools. The program is active 12 months a year. Fifteen

playgrounds and 20 skating rinks are maintained, as well as "leagues" in the various "competitive athletics." There are classes for children and adults as part of the community center program. On cross-examination, he said that part of the programs he attended "affected this city [Duluth] because in our general athletic program we are tied up closely with the state and other cities in a state program of which Duluth is a member."

It is part of Mr. Swanson's duties as truant officer to handle "cases where children are truant or incorrigible" and to "check up undernourished children" and report them to the family welfare organization. That phase of his work was one of the particular problems dealt with at the convention he attended.

On this point the case is controlled by Tousley v. Leach, 180 Minn. 293, 230 N. W. 788. In that action also a taxpayer challenged the expenditure of public money (of the city of Minneapolis) for what he seemed to think were mere "junketing" expenses of some city officials. Quite a delegation, including some aldermen who had helped to vote the money, made the journey. There was much more ground for criticism than here, where but one delegate went to each convention. No member of the board had any benefit of the expenditure which he had voted to authorize. The decision in the Tousley case, 180 Minn. 293, 230 N. W. 788, went against the plaintiff because the purpose of the expenditure was public. In the case of a school district it must be both public and educational. By that we mean that it must be to serve an activity, existing or contemplated, properly within the power of the board of education. That is established in this case. "If the purpose is a public one for which tax money may be used, and there is authority to make the expenditure, and the use is genuine as distinguished from a subterfuge or something farcical, there is nothing for the court. Whether there shall be such use is then one of policy for the legislature." Tousley v. Leach, 180 Minn. 293, 296, 230 N. W. 788. Beyond that it may be observed that there is also the political remedy of voting out the officers responsible for any expenditure not approved by their constituents.

In our consideration of this case we have been much helped by the findings and memorandum of the learned trial judge. They meet the issue squarely. Bad faith is negatived for all concerned. There is no suggestion that the district's money was being squandered. The decision against defendants was put upon the single ground that it was *"ultra vires* in the primary sense" for the board to employ Mr. Spear on a continuing basis and to authorize the two convention trips at the district's expense. With that view we cannot agree for the reasons already stated. The defendant board, having the power to expend public money for the purposes in question, is not shown to have transgressed the limits of that power by the mere manner of its exercise.

The orders under review are reversed with directions to amend the findings of fact and conclusions of law to conform with this decision, and to order judgment for defendants, unless, by motion for a new trial, plaintiff can present adequate grounds for compelling some restitution of money paid Mr. Spear. We apprehend that he cannot do so, but prefer to leave the case open for motion for a new trial on the lines indicated.

So ordered.

HILTON, JUSTICE, took no part in the consideration or decision of this case.