## IN RE APPLICATION OF ALLAN R. BURRILL AND OTHERS FOR CERTIFICATE AUTHORIZING STATE BANK OF SOUTH ST. PAUL TO TRANSACT BUSINESS AT CERTAIN LOCATION.

114 N. W. (2d) 688.

April 6, 1962—No. 38,282.

*Thuet & Todd,* for relators.

*Grannis & Grannis, LeVander, Gillen & Miller,* and *Schultz & Springer,* for respondents.

OTIS, JUSTICE.

The order which is here for review was entered September 6, 1960, by the Department of Commerce of the State of Minnesota denying appellants' application for a certificate authorizing them to transact a banking business at Twelfth Avenue South and Third Street South in the city of South St. Paul. The Department of Commerce assigned as its reason for denying the application the fact that the evidence was insufficient to prove a reasonable public demand for the proposed bank at the location indicated. It is the contention of appellants that in denying their application the Department of Commerce acted arbitrarily, oppressively, and unreasonably and that the decision is not reason-

ably supported by the evidence and represents the will and not the judgment of the department.

The conditions to be met as a prerequisite to securing a certificate of authority are set forth in Minn. St. 45.07 as follows:

"If the applicants are of good moral character and financial integrity, if there is a reasonable public demand for this bank in this location, if the organization expenses being paid by the subscribing shareholders do not exceed the necessary legal expenses incurred in drawing incorporation papers and the publication and the recording thereof, as required by law, if the probable volume of business in this location is sufficient to insure and maintain the solvency of the new bank and the solvency of the then existing bank or banks in the locality without endangering the safety of any bank in the locality as a place of deposit of public and private money, and if the department of commerce is satisfied that the proposed bank will be properly and safely managed, the application shall be granted otherwise it shall be denied."

While the failure to satisfy any one of the statutory requirements would justify a denial of the application, we infer from its failure to assign other reasons that, except as to proof of public demand, the Department of Commerce found the appellants' showing meritorious.

The record indicates that South St. Paul is a city of the second class with a population of approximately 21,500 persons. It is the second largest meat-packing center in the United States. Presently it is served by two banks located in the business district at the same intersection, geographically separated from the residential area by a ridge. Appellants' site is about a mile away, adjacent to a burgeoning shopping center in the middle of the residential district. While there are two loan companies in that vicinity it has no general banking facilities. A number of witnesses produced by appellants testified that there was a need for an additional bank in the proposed location.

The evidence on which the applicants relied heavily was a door-to-door survey conducted in the so-called hill area, the results of which indicated that out of 2,366 persons interviewed, 35 percent would use the services of a new bank if one were situated at the suggested site.

As might be expected, the objectors to the application consisted of

banking institutions located at or near South St. Paul. Witnesses for the objectors, as well as for the applicants, were by and large persons who had a direct and substantial interest in having the application granted or denied. In support of their contention that existing banking facilities were adequate, objectors offered testimony that there was no public demand for a new bank because the community was already served by two savings and loan associations, two credit unions, and five loan companies, in addition to the banks already mentioned. They pointed out the proximity of other banking facilities in adjacent communities such as the city of St. Paul, many of them very much larger institutions. Objectors also undertook a survey which, among other things, asked 313 householders if their families would switch to a new bank if one were located in the area under consideration, to which 75 percent of those surveyed answered in the negative.

The powers conferred by the legislature on the Department of Commerce and its predecessor, the State Securities Commission, and the function of the court in reviewing its decisions, have been concisely delineated in three of our decisions. In State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 224, 176 N. W. 759, 760, we pointed out that § 45.07 was designed to insure safe banking and was not intended to create a monopoly. However, in that case we affirmed the commission in finding that no reasonable public demand had been proved. The words "reasonable public demand," we noted, do not necessarily imply a public outcry or agitation for additional banking facilities, nor do they necessarily negative the existence of adequate banking accommodations in the area.

"* * * They suppose upon the part of the community a desire of a character so substantial as to make the bank welcome and insure an amount of business sufficient to promise it success."

We then proceeded to define our circumscribed responsibilities as follows (145 Minn. 225, 176 N. W. 761):

"* * * It [the court] cannot disturb the commission's determination because it does not agree with it. It can only interfere when it appears that the commission has not kept within its jurisdiction, or has proceeded upon an erroneous theory of the law, or unless its action

is arbitrary and oppressive and unreasonable so that it represents its will and not its judgment, or is without evidence to support it."

Our duties were again described in State ex rel. Saari v. State Securities Comm. 149 Minn. 101, 182 N. W. 910, and State ex rel. Duluth Clearing House Assn. v. Dept. of Commerce, 245 Minn. 529, 73 N. W. (2d) 790. In the latter case we suggested that the Department of Commerce, in reaching a decision as to reasonable public demand, might properly determine the potential market by reference to population, occupation, income, and existing banking facilities. We there said that reasonable public demand might be inferred from the potential market. The Duluth Clearing House case emphasized, however, that the Department of Commerce must be accorded considerable latitude in arriving at its determination.

Because there is evidence in the record before us on which the department may legally justify its findings, we affirm, although reluctantly. The order of the department falls short of being arbitrary, oppressive, and unreasonable. However, we feel constrained to observe that we do not agree with the department's decision. In a thriving, growing, urban community where there has been no new bank for a great many years, and there are no existing comparable banking facilities in the proposed residential site, it is difficult to understand why the department has disapproved the application. It seems apparent to us that a public demand can be inferred not only from the facts actually adduced by the testimony but from the tremendous expansion in our population and in our economy, of which the department and the court can properly take judicial notice. The statutory prerequisite of proving a public demand stems from the experience of a generation ago when the right to conduct a banking business was so loosely controlled that unfettered competition resulted in a rash of catastrophic bank failures. In correcting this situation, we believe the pendulum may have swung too far. The statute as now applied does indeed seem to foster monopolies in existing institutions. Be that as it may, whether our notions in the matter are correct or not, the remarks we made in Lindquist v. Abbett, 196 Minn. 233, 240, 265 N. W. 54, 57, seem peculiarly appropriate:

"* * * Such executive decisions are not interfered with by the

courts merely because they are based upon or involve mere errors of judgment. * * * it is pertinent to observe that executive officers as well as judges have a power to decide erroneously as well as rightly. There is a wide field wherein their decision, even though wrong, is final. The same is true of judges, the sum of whose errors will be kept somewhere near an irreducible minimum in proportion as they refrain from attempts to decide issues which constitutional and statutory law have committed to the legislative and executive departments of government."

Affirmed.

THOMAS GALLAGHER, JUSTICE (dissenting).

In my opinion the determination of the Department of Commerce that the evidence was insufficient to establish a reasonable public demand for the proposed bank at the described location in South St. Paul is unjustified. Such evidence established without dispute that South St. Paul has increased in population to 21,500 persons; that it is presently served by only two banks located in a business district approximately one mile from the proposed location of the new bank; that 35 percent of 2,366 persons interviewed indicated their intended use of the services of the new bank if it were established at the location proposed; and that 25 percent of 313 householders interviewed by the objectors either would or might transfer their banking requirements to the new bank if it were established as proposed. The department's determination in the face of such undisputed evidence, in my opinion, must be regarded as arbitrary and unreasonable. The majority opinion appears to concede this when it states:

"* * * It seems apparent to us that a public demand can be inferred not only from the facts actually adduced by the testimony but from the tremendous expansion in our population and in our economy, of which the department and the court can properly take judicial notice."

Affirmance of the department's determination here would seem to constitute approval of practices leading to monopolies in the banking field.

MR. JUSTICE ROGOSHESKE, not having been a member of the court

at the time of the argument and submission, took no part in the consideration or decision of this case.