IN RE APPLICATION OF D. O. GUSTAFSON AND OTHERS
FOR CERTIFICATE AUTHORIZING SUMMIT STATE BANK
OF RICHFIELD-BLOOMINGTON TO TRANSACT BUSINESS
IN VILLAGE OF RICHFIELD.
D. O. GUSTAFSON AND OTHERS v. RICHFIELD BANK
AND TRUST COMPANY.

133 N. W. (2d) 843.

February 26, 1965—No. 39,396.

*Diessner, McEachron, Wurst, Bundlie & Carroll* and *Karl F. Diessner,* for relator.

*Terrance S. O'Toole,* for respondents.

Frank T. Gallagher, C.

This matter is before us on certiorari to review a decision of the Minnesota Department of Commerce granting a certificate authorizing a bank to transact business in the village of Richfield.

On October 24, 1963, the application of D. O. Gustafson and others for a certificate authorizing the First State Bank of Richfield-Bloomington was heard before the Department of Commerce. Richfield Bank and Trust Company appeared in opposition to the granting of the application. At the conclusion of the hearing and pursuant to an agreement of the applicants, the name of the proposed bank was changed to Summit State Bank of Richfield-Bloomington, and the application was granted on December 17, 1963. The objector thereupon obtained the writ of certiorari.

Applicants contend that an order of the Department of Commerce *granting* an application for a state bank charter may not be reviewed by certiorari. They claim (a) that to review by certiorari the order must be one that *denies* the application, and (b) that the review must be sought by an "aggrieved person."

Minn. St. 45.07 provides:

"* * * In case of the *denial* of the application, the department of commerce shall specify the grounds for the denial and the supreme court, upon petition of any person aggrieved, may review by certiorari any such order or determination of the department of commerce." (Italics supplied.)

The statute provides for review by certiorari of a denial of the application, but contains no provision for such a review if it is granted. We have reviewed by certiorari cases in which applications have been denied. See, State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 176 N. W. 759; State ex rel. Saari v. State Securities Comm. 149 Minn. 101, 182 N. W. 910; In re Application of Burrill, 262 Minn. 270, 114 N. W. (2d) 688. State ex rel. Duluth Clearing House Assn. v. Dept. of Commerce, 245 Minn. 529, 73 N. W. (2d) 790, was before this court on certiorari to review a decision of the Department of Commerce granting the application of Industrial Credit Plan, Inc., for a certificate authorizing it to transact business as an indus-

trial loan and thrift company in the city of Duluth. That case, however, was under Minn. St. c. 53, which contained no provision for review by certiorari. Applicants there contended that the order under consideration could not be reviewed by certiorari and that the objector had no standing to obtain a review. We did not pass on that point, but this court said (245 Minn. 531, 73 N. W. [2d] 792):

"* * * In view of the decision we arrive at on the merits, we need not now determine the technical questions raised as to the right to review."[1]

We shall follow the precedent of the Duluth Clearing House case and consider this case on the merits. The absence in Minn. St. c. 45 of provision for review of an order granting an application appears to us to be a legislative oversight. A legislative clarification would be most helpful.

The village of Richfield is a suburban community bordered on its north by the city of Minneapolis, on its west by the city of Edina, on its south by the city of Bloomington, and on its east by International Airport. Objector, Richfield Bank and Trust Company, is located on Lyndale Avenue South a few hundred feet south of 66th Street. Applicants propose to locate at 66th and Nicollet Avenue South, approximately four blocks from objector's bank.

The prerequisites for securing a certificate of authority for a state bank charter in Minnesota are set forth in § 45.07, which reads in part as follows:

"If the applicants are of good moral character and financial integrity, if there is a reasonable public demand for this bank in this location, if the organization expenses being paid by the subscribing

---

[1] Plunkett v. First Nat. Bank, 262 Minn. 231, 115 N. W. (2d) 235, was also before us on certiorari to review an order of the Department of Commerce granting an application by Plunkett and others to change the name and place of business of the Minnesota Trust Company of Albert Lea. We determined there that where relator proceeded under Minn. St. c. 45 but not until lapse of more than 60 days from the date notice had been mailed to it pursuant to Minn. St. 15.0422, proceedings by writ of certiorari were barred by Minn. St. 606.01.

shareholders do not exceed the necessary legal expenses incurred in drawing incorporation papers and the publication and the recording thereof, as required by law, if the probable volume of business in this location is sufficient to insure and maintain the solvency of the new bank and the solvency of the then existing bank or banks in the locality without endangering the safety of any bank in the locality as a place of deposit of public and private money, and if the department of commerce is satisfied that the proposed bank will be properly and safely managed, the application shall be granted otherwise it shall be denied."

See, also, State ex rel. Dybdal v. State Securities Comm. *supra.*

Objector's argument deals mainly with the question whether there is a reasonable public demand for a bank in the location applicants propose to place it. We shall not attempt to set out in detail all of the testimony presented at the hearing. In connection with the statutory requisite that there be a reasonable demand for a bank in the location proposed, applicants introduced evidence relative to population. The 1960 census shows a population of 42,523 for Richfield and 50,498 for Bloomington. At the time of the hearing, according to the testimony of W. S. Snyder, one of the applicants, the estimated population of the village of Richfield was 44,426 and of Bloomington 61,147, making a total of 105,573 for the Richfield-Bloomington area.

Applicants also introduced evidence relative to existing banking facilities and other financial institutions in the area. Exhibits were introduced showing the number of cars which had passed the proposed location daily. A traffic-flow map dated 1962, prepared by the Hennepin County Highway Department, showed that on 66th Street 14,700 cars passed daily, and on Nicollet Avenue approximately 14,000 cars a day passed the proposed location. Applicants also conducted an economic survey, which is incorporated in their exhibit 2. Among other things, their survey shows the economic character of the area to be serviced. It appears from the survey that in the Richfield area only 3.9 percent of the population is in the under-$3,000 income bracket, while 23.6 percent is in the income bracket of $10,000 and over. Applicants introduced evidence relative to the industrial zon-

ing of the area, the recreation and educational facilities of the area, the type of government in Richfield and Bloomington, the type of water and sewer program available in those places, the type of fuel used, and the transportation available. Applicants also listed a number of large Bloomington firms with the number of employees of each. In the Richfield area alone it appears that there are 29 manufacturing establishments, 18 wholesale factories, and 160 service companies. Applicant Gustafson testified:

"The evidence supporting the reasonable public demand, I feel, is very strong in the fact that there are in excess of 50,000 people in the trade area and in excess of 100,000 people in the easily-reached or adjacent area. There are thousands of people close to this bank * * *. We are proposing a bank in a shopping center, which is a very successful shopping center—in a commercial area which we have found to be a logical place for a bank charter. It is on a corner where there are over 28,000 cars that pass daily in front of it."

On the other hand, objector argues that the only direct testimony relative to any public demand for the proposed bank came from witnesses presented by objector who testified in general that they knew of no public demand nor any desire on the part of any members of the community for another bank. All of those witnesses, however, were either borrowers, persons obtaining insurance business from objector, stockholders, or officers of objector's bank. Objector contends that the unrefuted testimony shows clearly that there was no demand or desire for an additional bank in this location because Richfield is fully built up and has reached its saturation point in population; that it has no industry of any consequence; that the community is almost entirely residential, with a great percentage of its residents being employed throughout Ramsey and Hennepin Counties; and that there are adequate facilities for the deposit and borrowing of funds throughout the community.

The Department of Commerce found that the applicants are of good moral character and financial integrity; that there is a reasonable public demand for the bank in the location proposed; that the organization expenses being paid by the subscribing stockholders do not

exceed the necessary legal expenses incurred in drawing incorporation papers, etc., as required by law; that the probable volume of business in the locality proposed is sufficient to insure and maintain the solvency of the new bank and of the then-existing bank or banks in the locality without endangering the safety of any bank in the locality as a place of deposit of public and private money; that the name of the proposed bank should be changed to Summit State Bank of Richfield-Bloomington; and that, provided that the capital accounts shall be increased to $400,000, and based upon the testimony of applicants that the bank will apply for insurance by the Federal Deposit Insurance Corporation and procure such insurance, then, in the opinion of the department, the bank will be properly and safely managed.

From such facts the department concluded that the application should be granted upon compliance with the provisions of law applicable to the organization of state banks; the furnishing of satisfactory evidence of the change of the name of the bank; the increase of capital accounts to $400,000; the procurement of insurance by the Federal Deposit Insurance Corporation; and compliance with such reasonable rules, etc., as the commissioner may impose. Based upon its findings and conclusions, it directed the commissioner of banks, after applicants' compliance with the conditions set forth, to issue the certificate of authorization in the name of Summit State Bank of Richfield-Bloomington to be located in the Hub Shopping Center, 66th and Nicollet Avenue, in the village of Richfield.

The scope of our review in this case is limited to whether the Department of Commerce has kept within its jurisdiction; whether it has proceeded on an erroneous theory of law; whether its action is so arbitrary and unreasonable that it represents its will and not its judgment; and whether its decision is without evidence to support it. State ex rel. Duluth Clearing House Assn. v. Dept. of Commerce, *supra*.

Objector contends that the decision of the department is arbitrary, oppressive, and unreasonable, and is based upon the will and not the judgment of the department, and that there is no evidence to support it. It argues that there was no evidence presented upon which men exercising sound judgment rather than their will could find that there

is a reasonable public demand for a bank in the location here proposed. Applicants claim, however, that the evidence supports the order of the department and that its decision was based upon the testimony, exhibits, and other evidence before it.

In State ex rel. Dybdal v. State Securities Comm. *supra,* this court said that it is difficult to give the words "reasonable public demand" a clearer meaning than they carry without definition; that they do not necessarily imply a public outcry or agitation for additional banking facilities, nor do they necessarily negate the existence of adequate banking accommodations. Instead, the court commented that they suppose upon the part of the community a desire of a character so substantial as to make the bank welcome and insure an amount of business sufficient to promise its success. The court said (145 Minn. 224, 176 N. W. 760):

"* * * The demand may come from the natural desire of the community and upon its own initiative, or it may be the result of propaganda. * * * It does not intend that one or more established banks may keep out another because the banking facilities sufficiently take care of the banking business. Its purpose is not to deter competition or foster monopoly, but to guard the public and public interests against imprudent banking."

Again, in State ex rel. Duluth Clearing House Assn. v. Dept. of Commerce, *supra,* after quoting from the Dybdal case with reference to the words "reasonable public demand," this court discussed the question of just how to prove reasonable public demand; in other words, what amount of proof is necessary to sustain the department's findings? We said there that it was conceivable that in a comparatively small community, where sentiment is apt to crystalize quickly and a large part of the population would take an interest one way or another, it would be comparatively easy to determine whether there was a desire, at least on the part of a large percentage of the people, to have a new bank; but it would also be quite likely that another group of people in such a community would oppose the establishment of the bank. In larger metropolitan areas, however, the court said that a different problem exists (245 Minn. 533, 73 N. W. [2d] 794):

"* * * Conceivably it would be quite simple to parade a few people or a few dozen citizens before the department to state that they desired such an institution, and an equal number probably would appear on the opposite side. It might be possible to procure petitions signed by a few or even a large number of citizens. But to get a cross-section expression of opinion which would reflect a desire on the part of the community for the institution that would be at all representative is quite another thing."

It was the belief of this court in that case that the requirements of the statutes are intended for the protection of the public and that we should not so construe them that it becomes impossible for the department to perform the functions delegated to it by the legislature. We further said that the responsibility for the findings of fact rests upon the department and that we should not interfere unless the evidence falls so far short of what is required that it can reasonably be said that the findings are arbitrary or unreasonable and that they represent the will of the department and not its judgment. See, also, State ex rel. Saari v. State Securities Comm. *supra.*

It is our opinion after an examination of the entire record in the instant case that there was evidence to support the decision of the Department of Commerce. It appears to us that the evidence as a whole reasonably justifies the inferences that the department has drawn in arriving at its decision and that we should not interfere.

While it is reasonable to assume that the objector does not crave the issuance of a certificate of authorization to applicants for the location here involved, we cannot say that in ordering the issuance of such a certificate the Department of Commerce was arbitrary, oppressive, and unreasonable, or that its decision was based upon the will and not the judgment of the department. Neither can we say that there was no evidence to support its determination, as it appears to us that there was.

Affirmed.

Mr. Justice Thomas Gallagher took no part in the consideration or decision of this case.